MONTANA WILDERNESS ASSOCIATION, NINE QUARTER CIRCLE RANCH, and the Wilderness Society, Plaintiffs-Appellants,

v.

UNITED STATES FOREST SERVICE, John McGuire, its chief; Lewis Hawkes, Gallatin National Forest Supervisor; United States Fish and Wildlife Service; Harry Willoughby, its regional director; Burlington Northern, Inc., a Delaware corporation; Bob Bergland, Secretary of Agriculture, Defendants-Appellees,

and

The National Forest Products Association, Intervening Defendant-Appellee.

No. 80-3374.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 9, 1981.

Decided Aug. 19, 1981.

James H. Goetz, Goetz & Madden, Boze-man, Mont., for plaintiffs-appellants.

David Booth Beers, Washington, D. C., argued, for intervening defendant-appellee; Richard S. Wasserstrom, S. Elizabeth Gibson, William N. Eskridge, and Jeffrey C. Martin, Washington, D. C., on brief.

Kurt W. Kroschel, Billings, Mont., Dirk D. Snel, Washington, D. C., argued, for defendants-appellees; Rick Anderson, Butte, Mont., Kurt W. Kroschel, Billings, Mont., James G. Watt, Denver, Colo., James W. Moorman, Washington, D. C., on brief.

Before ANDERSON and NORRIS, Circuit Judges, and SCHWARZER,* District Judge.

NORRIS, Circuit Judge:

Environmentalists and a neighboring property owner seek to block construction by Burlington Northern of roads over parts of the Gallatin National Forest. They appeal from a partial summary judgment in the district court granting Burlington Northern a right of access to its totally enclosed timberlands. *Montana Wilderness Association v. United States Forest Service*, 496 F.Supp. 880 (D.Mont.1980). The district court held that Burlington Northern has an easement by necessity or, alternatively, an implied easement under the Northern Pacific Land Grant of 1864. *Id.* at 883–88. The defendants argue that the Alaska National Interest Lands Act of 1980, passed subsequent to the district court's decision, also grants Burlington Northern assured access to its land. The appellants contend that the doctrine of easement by necessity does not apply to the sovereign, that there was no implied easement conveyed by the 1864 land grant, and that the access provisions of the Alaska Lands Act do not apply to land outside the state of Alaska. We conclude that the Alaska Lands Act does grant access to Burlington Northern. We therefore affirm the partial summary judgment and remand the case for further proceedings.

I.

Defendant-Appellee Burlington Northern, Inc. owns timberland located within the Gallatin National Forest southwest of Bozeman, Montana. This land was originally acquired by its predecessor, the Northern Pacific Railroad, under the Northern Pacific Land Grant Act of 1864, 13 Stat. 365. The Act granted odd-numbered square sections of land to the railroad, which, with the even-number sections retained by the United States, formed a checkerboard pattern.[1]

To harvest its timber, Burlington Northern in 1979 acquired a permit from defendant-appellee United States Forest Service, allowing it to construct an access road across national forest land. The proposed roads would cross the Buck Creek and Yellow Mules drainages, which are protected by the Montana Wilderness Study Act of 1977, Pub.L. 95–150, 91 Stat. 1243, as poten-

---

* The Honorable William W Schwarzer, United States District Judge for the Northern District of California, sitting by designation.

1. For a more complete discussion of the history of the railroad land grants, see *Leo Sheep Co. v. United States*, 440 U.S. 668, 99 S.Ct. 1403, 59 L.Ed.2d 677 (1979); *Great Northern Ry. Co. v. United States*, 315 U.S. 262, 62 S.Ct. 529, 86 L.Ed. 836 (1942); *United States v. Northern Pacific Ry. Co.*, 311 U.S. 317, 61 S.Ct. 264, 85 L.Ed. 210 (1940); and *Platt v. Union Pacific Ry.*, 99 U.S. 48, 25 L.Ed. 424 (1878).

tial wilderness areas. The proposed logging and road-building will arguably disqualify the areas as wilderness under the Act.

The plaintiffs, Montana Wilderness Association, The Wilderness Society, and Nine Quarter Circle Ranch, having contested the granting of the permit, filed suit after it was granted, seeking declaratory and injunctive relief. A temporary restraining order was granted. Before the scheduled preliminary injunction hearing, the Forest Service suspended the permit and submitted the legal question of Burlington Northern's right of access to the Attorney General. The case lay dormant until Attorney General Civiletti issued his opinion. Op. Att'y Gen., slip at 1 (June 23, 1980). Of the three theories given in support of Burlington Northern's right of access, the Attorney General rejected two—that there is a right of access under the Forest Service Organic Administrative Act of 1897, 16 U.S.C. § 478, and that Burlington Northern has an easement by necessity—but left open the issue whether Burlington Northern has an implied easement under the Northern Pacific Land Grant of 1864.

After the Attorney General's opinion was issued, the Forest Service reconsidered the case, and reinstated the permit on the grounds that Burlington Northern had an assured right of access under the 1864 land grant.[2] The parties immediately filed cross-motions for summary judgment on the assured access issue. The district court denied the plaintiffs' motion and granted the defendants' partial summary judgment motion. The order for partial summary judgment was designated as final for purposes of appeal pursuant to Fed.R.Civ.P. 54(b).

During the pendency of this appeal, construction of an access road through the Buck Creek drainage has proceeded to such an extent that it is unclear whether completion of the road will cause any more environmental damage than has occurred already.[3] In any case, the appeal is not moot because the construction of access roads through the Yellow Mules drainage has not yet begun.

## II.

The sole issue on appeal is whether Burlington Northern has a right of access across federal land to its inholdings of timberland. Appellees contend that the recently enacted Alaska National Interest Lands Conservation Act (Alaska Lands Act), Pub.L. No. 96–487, 94 Stat. 2371 (1980), establishes an independent basis for affirming the judgment of the district court. They argue that § 1323(a) of the Act requires that the Secretary of Agriculture provide access to Burlington Northern for its enclosed land.

Section 1323 is a part of the administrative provisions, Title XIII, of the Alaska Lands Act. Appellees argue that it is the only section of the Act which applies to the entire country; appellants argue that, like the rest of the Act, it applies only to Alaska. Section 1323 reads as follows:

Sec. 1323. (a) Notwithstanding any other provision of law, and subject to such terms and conditions as the Secretary of Agriculture may prescribe, the Secretary shall provide such access to nonfederally owned land within the boundaries of the National Forest System as the Secretary deems adequate to secure to the owner the reasonable use and enjoyment thereof: *Provided,* That such owner comply with rules and regulations applicable to ingress and egress to or from the National Forest System.

(b) Notwithstanding any other provision of law, and subject to such terms and

---

2. If Burlington Northern does not have an enforceable right of access, the protected status of the federal land may remove the Secretary of Agriculture's usual discretion to grant access over Forest Service land. Section 3(a), Montana Wilderness Study Act, Pub.L. 95–150, 91 Stat. 1243 (1977). Burlington Northern's remedy would be the eventual exchange of its in-

holdings for other federal land of comparable value. 16 U.S.C. § 1134(a); H.R.Rep. No. 95–620, 95th Cong., 1st Sess. 6 (1977).

3. A preliminary injunction to halt the construction was denied by the district court, and by this court on appeal.

conditions as the Secretary of the Interior may prescribe, the Secretary shall provide such access to nonfederally owned land surrounded by public lands managed by the Secretary under the Federal Land Policy and Management Act of 1976 (43 U.S.C. 1701–82) as the Secretary deems adequate to secure to the owner the responsible use and enjoyment thereof: *Provided,* That such owner comply with rules and regulations applicable to access across public lands.

This section provides for access to non-federally-owned lands surrounded by certain kinds of federal lands. Subsection (b) deals with access to nonfederal lands "surrounded by public lands managed by the Secretary [of the Interior]." Section 102(3) of the Act defines "public lands" as certain lands "situated in Alaska." Subsection (b), therefore, is arguably limited by its terms to Alaska, though we do not find it necessary to settle that issue here. Our consideration of the scope of § 1323(a) proceeds under the assumption that § 1323(b) is limited to Alaska.

Subsection (a) deals with access to non-federally-owned lands "within the boundaries of the National Forest System." The term "National Forest System" is not specifically defined in the Act.

The question before the court is whether the term "National Forest System" as used in § 1323(a) is to be interpreted as being limited to national forests in Alaska or as including the entire United States. We note at the outset that the bare language of § 1323(a) does not, when considered by itself, limit the provision of access to Alaskan land. We must look, however, to the context of the section to determine its meaning.

Elsewhere in the Act, Congress used the term "National Forest System" in a context which refers to and deals with national forests in Alaska. Title V of the Act is entitled "National Forest System." Section 501(a) states: "The following units of the National Forest System are hereby expand-

ed ...." It is not unreasonable to read Section 1323(a) as referring to the "National Forest System" in the context in which it is used in Title V of the Act, rather than to all national forests in the United States.

Congress did, however, supply us with a general definition of the term in another statute. Pub. Law 93–378, 88 Stat. 480 (1974). 16 U.S.C. § 1609(a) states *inter alia* that:

> Congress declares that the National Forest System consists of units of federally owned forest, range, and related lands throughout the United States and its territories, united into a nationally significant system dedicated to the long-term benefit for present and future generations, and that it is the purpose of their section to include all such areas into one integral system. The 'National Forest System' shall include all national forest lands reserved or withdrawn from the public domain of the United States, ....

Application of this definition to § 1323(a) would necessarily yield the conclusion that the section was intended to have nation-wide effect. This seems especially so when Congress uses the term "National Forest System" in § 1323(a) without limitation or qualification.

As the parties agreed at oral argument, however, § 1323(b) is *in pari materia* with § 1323(a). The two subsections are placed together in the same section, and use not only a parallel structure but many of the same words and phrases. The natural interpretation is that they were meant to have the same effect, one on lands controlled by the Secretary of Agriculture, the other on lands controlled by the Secretary of the Interior. Since we assume that § 1323(b), by definition of public lands in § 102(3), applies only to Alaskan land, we face a presumption that § 1323(a) was meant to apply to Alaska as well.

That interpretation is supported by a review of the entire Act which discloses no other provision having nation-wide application.[4] We therefore conclude that the lan-

---

4. The appellees concede that no other section of the Act applies nationwide. They argue,

however, that because another provision of the Act, § 1110(b), gives access rights to all Alas-

---

guage of the Act provides tentative support for the view that § 1323(a) applies only to national forests in Alaska. Bearing in mind that "[a]bsent a clearly expressed legislative intent to the contrary, [the statutory] language must ordinarily be regarded as conclusive," *Consumer Product Safety Commission v. GTE Sylvania*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980), we turn to the legislative history.

The legislative history concerning § 1323 is surprisingly sparse.[5] The report of the Senate committee which drafted the section is ambiguous.[6] At times when the Senate could have been expected to comment on its intention to make a major

kan inholders, § 1323(a) is superfluous unless it is interpreted to apply to the entire country. Section 1110(b), they argue, like § 1323(b), applies only to Alaska because it uses terms, "public lands" and "conservation system unit," which are defined to include only Alaskan land.

The flaw in appellees' argument is that however § 1323(a) is interpreted, § 1110(b) essentially duplicates the protection given Alaskan lands by § 1323 as a whole. Section 1110(b) overlaps § 1323(b) just as much as it overlaps § 1323(a). If, as appellees claim, § 1110(b) gives access to all Alaskan inholders and § 1323(a) gives access to holders of land surrounded by land administered by the Secretary of Agriculture, the inclusion of § 1323(b) in the Act makes no sense at all. Section 1323(b), after all, gives access to holders of Alaskan land surrounded by land administered by the Secretary of the Interior. Under this view, not only is § 1323(b) superfluous in light of § 1110(b), it is paired with a provision, § 1323(a), of parallel structure but widely different scope. We do not see how the existence of § 1110(b) gives much support to the appellees' position.

5. Section 1323 was added to the Alaska Lands Bill by the Senate Committee on Energy and Natural Resources in its amendment to H.R. 39, originally passed by the House. S.Rep.No.96–413, 96th Cong. 1st Sess. (1979), *reprinted in* [Feb. 1981] U.S.Code Cong. & Ad.News 9130. It was incorporated in the Tsongas substitute bill which replaced by amendment the Energy Committee's proposed bill, 126 Cong.Rec. S11099, S11140 (daily ed. Aug. 18, 1980). The Tsongas substitute bill was passed by the Senate, 126 Cong.Rec. S11193 (daily ed. Aug. 19, 1980), and House, 126 Cong.Rec. H10552 (daily ed. Nov. 12, 1980), and became law on December 1, 1980, 94 Stat. 2371.

6. The Energy Committee report discussed it in its section-by-section analysis, S.Rep.No.96–413 at 310, [Feb. 1981] U.S.Code Cong. & Ad. News at 9314. (The Committee analysis mixes up §§ 1323 and 1324. Thus, the analysis entitled § 1324 is really concerned with § 1323 and vice versa.) Although the appellees contend that the language of the Energy Committee report makes perfectly clear the Committee's intent that § 1323 apply nationwide, we do not find their interpretation of the report's language persuasive:

This section is designed to remove the uncertainties surrounding the status of the rights of the owners of non-Federal lands to gain access to such lands across Federal lands. It has been the Committee's understanding that such owners had the right of access to their lands subject to reasonable regulation by either, the Secretary of Agriculture in the case of national forests, or by the Secretary of the Interior in the case of public lands managed by the Bureau of Land Management under the Federal Land Policy and Management Act of 1976. However, a recent District Court decision in Utah (*Utah v. Andrus et al.*, C79–0037, October 1, 1979, D.C. Utah) has cast some doubt over the status of these rights. Furthermore, the Attorney General is currently reviewing the issue because of differing interpretations of the law by the Departments of Agriculture and the Interior.

\* \* \* \* \* \*

The Committee amendment is designed to resolve any lingering legal questions by making it clear that non-Federal landowners have a right of access [across] National Forests and public land, subject, of course, to reasonable rules and regulations.

S.Rep.No.96–413 at 310, [Feb. 1981] U.S.Code Cong. & Ad.News at 9314.

While the Committee's intent to guarantee access is clear, it is less than clear whether this provision was meant to guarantee access outside of Alaska. The problem raised in the first paragraph—the differing interpretations of the law of access—is not confined to Alaska, but the scope of the remedy as set forth in the last paragraph could be so confined. As with § 1323 itself, the report uses indiscriminately terms defined in the Act as applying only to Alaskan land ("public land") and terms not so defined ("National Forests").

The absence of any reference to Alaska is not of much import. The report's discussion of other access provisions such as § 1110 and § 1111, which all parties agree apply only to Alaska, fails to mention Alaska and is as ambiguous about whether § 1110 and § 1111 apply nationwide as is the discussion of § 1323. S.Rep.No.96–413 at 299–300, [Feb. 1981] U.S.Code Cong. & Ad.News at 9303–04.

change in current law, it did not.[7] The only expression of intent that § 1323 apply nation-wide came from a single senator eight days after the Alaska Lands Act was passed by Congress.[8] In the House debates, three representatives suggested that § 1323 did apply nation-wide, but the chairman of one of the responsible committees said it did not.[9] Two chairmen of House subcommittees responsible for the bill did state in a letter to the Attorney General that they believed that § 1323 applied nation-wide, but there is no indication that the contents of this letter were generally known by members of the House, and so the letter carries little weight in our analysis.[10] All

7. The Alaska Lands bill was discussed endlessly on the Senate floor. There are numerous occasions when one would expect a change in current laws of access of the magnitude of the appellees' proposed interpretation of § 1323 to be discussed, mentioned or at least alluded to. Yet we have not found in the Senate debates, and appellees have not called to our attention, one single suggestion that anything in the Alaska Land Bill would affect access rights in the rest of the country. In Senator Tsongas' long, detailed comparison of his substitute bill with the Energy Committee bill, § 1323 is not mentioned. 126 Cong.Rec. S11193 (daily ed. Aug. 19, 1980). In discussion about the adequacy of the substitute bill's access provisions (which include § 1323) no mention is made of a change in the law of access for the rest of the country. 126 Cong.Rec. S11061–62 (daily ed. Aug. 18, 1980).

Neither did Senator Tsongas remark on § 1323 when it was first proposed in the Energy Committee bill, even though in his statement in the Committee report he spends several pages criticizing the bill's overbroad provisions on access. S.Rep.No.96–413 at 422–24, [Feb. 1981] U.S.Code Cong. & Ad.News at 9422–23 (additional views of Senators Metzenbaum and Tsongas). Yet the extension of § 1323(a) to the entire country would certainly have a greater impact than the other measures he discusses.

8. Senator Melcher, the author of the section, discussed it on the floor of the Senate, 126 Cong.Rec. S14770–71 (daily ed. Nov. 20, 1980). The remarks of Senator Melcher, however, were made on November 20th, eight days after Congress passed H.R. 39. His remarks clearly demonstrate that his personal understanding of the section is that it applies nationwide, but because they are the remarks of but one senator made subsequent to the passage of the bill they do not provide a reliable indication of the understanding of the Senate as a whole.

9. On October 2, 1980, Representative Udall, chairman of the Committee on Interior and Insular Affairs which had joint responsibility for the bill, introduced an amendment one section of which was to "make clear that [the bill] applies only to Alaska." 127 Cong.Rec. 10376 (daily ed. October 2, 1980). This amendment was never adopted. Representative Udall subsequently declared in prepared remarks inserted into the Congressional Record that although the final version of the bill was "ambiguously drafted and not expressly limited to Alaskan lands, the House believes that, as with all the other provisions of the bill, the language of the section applies only to lands within the State of Alaska." 126 Cong.Rec. H10549 (daily ed. Nov. 12, 1980). Representative Weaver stated that the section granting access rights to inholders on national forest and BLM lands "apparently applies not only to Alaska but also to the entire United States." 126 Cong.Rec. H8638 (daily ed. September 9, 1980). Representative Sieberling inserted into the record a summary of proposed amendments, which refers to Section 1323 as the "nationwide access amendment." 126 Cong.Rec. H10350 (daily ed. October 2, 1980). Representative AuCoin stated that one of the flaws of the final bill is that it "grants private inholders carte blanche access across national forest and public lands nationwide." 126 Cong.Rec. H10529–30 (daily ed. Nov. 12, 1980).

10. Appellees rely heavily upon an exchange of letters between Representatives Sieberling and Weaver, chairmen of the subcommittees responsible for the bill (Public Lands of the Committee on Interior and Insular Affairs and Forest of the Committee on Agriculture), and the Attorney General's office. In their letter, the representatives express concern over § 1323, which they state applies nationwide, and ask for a clarification of how different the § 1323 access language is from existing access provisions. It is indeed clear from their letter that they believed that § 1323 applies nation-wide.

Appellees argue, on the basis of the September 5, 1980 return letter from Assistant Attorney General Alan Parker, that the Department of Justice confirmed this interpretation of § 1323. We interpret the letter differently. As we read the letter, the Assistant Attorney General assumed without analysis that the representatives' interpretation of § 1323 was correct, and proceeded to discuss in detail the effect of such a change in the law.

The exchanged letters are entitled to little weight. In general, off-the-record views of congressmen are not attributed to Congress as a whole. See T. V. A. v. Hill, 437 U.S. 153, 190–91, 98 S.Ct. 2279, 2299–30, 57 L.Ed.2d 117 (1978). This is particularly true where, as here, there is no indication that the House as a whole was aware of the correspondence. Id. at 191–92, 98 S.Ct. at 2300.

this gives only slight support at best to the appellees' interpretation that § 1323 applies nation-wide.

The appellees, however, have uncovered subsequent legislative history that, given the closeness of the issue, is decisive. Three weeks after Congress passed the Alaska Lands Act, a House-Senate Conference Committee considering the Colorado Wilderness Act interpreted § 1323 of the Alaska Lands Act as applying nation-wide:

> Section 7 of the Senate amendment contains a provision pertaining to access to non-Federally owned lands within national forest wilderness areas in Colorado. The House bill has no such provision.
>
> *The conferees agreed to delete the section because similar language has already passed Congress in Section 1323 of the Alaska National Interest Lands Conservation Act.*

H.R.Rep.No.1521, 96th Cong., 2d Sess., 126 Cong.Rec. H11687 (daily ed. Dec. 3, 1980) (emphasis supplied).

This action was explained to both Houses during discussion of the Conference Report. *See* 126 Cong.Rec. S15571 (daily ed. Dec. 4, 1980) (remarks of Sen. Hart); *Id.* at S15573 (remarks of Sen. Armstrong); *Id.* at H11705 (daily ed. Dec. 3, 1980) (remarks of Rep. Johnson). Both houses then passed the Colorado Wilderness bill as it was reported by the Conference Committee.

■■■ Although a subsequent conference report is not entitled to the great weight given subsequent legislation, *Consumer*

*Product Safety Commission v. GTE Sylvania*, 477 U.S. 102, 118 n.13, 100 S.Ct. 2051, 2061 n.13, 64 L.Ed.2d 766 (1980), it is still entitled to significant weight, *Seatrain Shipbuilding Corp. v. Shell Oil Co.*, 444 U.S. 572, 100 S.Ct. 800, 814, 63 L.Ed.2d 36 (1980), particularly where it is clear that the conferees had carefully considered the issue. *See Consumer Product Safety Commission, supra,* at 120, 100 S.Ct. at 2062; *Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944). The conferees, including Representatives Udall and Sieberling and Senator Melcher, had an intimate knowledge of the Alaska Lands Act.[11] Moreover, the Conference Committee's interpretation of § 1323 was the basis for their decision to leave out an access provision passed by one house. In these circumstances, the Conference Committee's interpretation is very persuasive. We conclude that it tips the balance decidedly in favor of the broader interpretation of § 1323.[12] We therefore hold that Burlington Northern has an assured right of access to its land pursuant to the nation-wide grant of access in § 1323.

### III.

■■■ The federal appellees argue that the passage of the Alaska Lands Act moots this appeal and that this court is accordingly required to dismiss it and vacate the partial summary judgment of the district court. *See Great Western Sugar Co. v. Nelson*, 442 U.S. 92, 93–94, 99 S.Ct. 2149, 2150, 60 L.Ed.2d 735 (1979). The private appellees

---

**11.** The participation of Representative Udall is particularly noteworthy since he was the one congressman to proclaim in the legislative history of the Alaska Lands Act that § 1323 applied only to Alaska.

**12.** We recognize a facial problem or tension between 1323(a) and a portion of § 5(a) of the Wilderness Act, 16 U.S.C. § 1134(a). We need not decide in this case whether there is repeal by implication. In passing, we note only that it is arguable that the two can stand together. § 1134(a) deals specifically with right of access '[i]n any case where State-owned or privately-owned land is completely surrounded by national forest lands *within areas designated by this chapter as wilderness ....*' (emphasis added). § 1323(a), on the other hand, deals

with '... access to non-federally owned land within the boundaries of the National Forest System ...' § 1134(a) is addressed specifically to an area designated as 'wilderness,' while § 1323(a) is addressed to National Forest System lands in general. In cases involving wilderness areas, the Secretary has the option of exchanging land of equal value so that the wilderness area may be preserved. Thus, § 1134(a) could be construed to apply in the specific case of a wilderness area, and § 1323(a) could be construed to apply in all other cases.

Whether or not they are in fact irreconcilable we leave to another case when the issue is squarely presented for review.

argue that the Alaska Lands Act is at most an alternate ground for upholding the partial summary judgment, and so would not moot the appeal.[13]

We conclude that the Alaska Lands Act did not moot this appeal, but is merely an alternate ground for upholding the district court. The enactment of new law during an appeal "ordinarily calls simply for application of the new law." Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction § 3533 at 276. The exception is that an attack on a statute will be mooted by new legislation which eliminates the aspects of the old law which gave rise to the challenge. *Id.* at 276–78. *See, e. g., Allee v. Medrano,* 416 U.S. 802, 94 S.Ct. 2191, 40 L.Ed.2d 566 (1974); *Diffenderfer v. Central Baptist Church,* 404 U.S. 412, 92 S.Ct. 574, 30 L.Ed.2d 567 (1972). Here the new legislation, the Alaska Lands Act, did not render pointless the resolution of the access issue raised by Montana Wilderness in its complaint below, as happens when an attacked statute is repealed. The new legislation in this case merely provided a new ground for resolving the access issue on appeal. We therefore find that this appeal is not moot.

The partial summary judgment of the district court is AFFIRMED and the case REMANDED to the district court.

---

**13.** The private appellees also claim that this court should decide the land grant issue. A right of access under the 1864 land grant is "broader" than a right of access under the Alaska Lands Act, they contend, because it could not be rescinded. We need not decide the issue whether Burlington Northern has access under the 1864 land grant. Burlington Northern has not identified any respect in which its current right of access under the land grant would be any different than access under the Alaska Lands Act. Since this appeal arose on the plaintiffs' motion for summary judgment on the issue whether Burlington Northern has a current right to access, the question of access upon a hypothetical future event, the repeal of the statutory right of access, is not before us for decision.