**William FISHER, Plaintiff-Appellant,**

v.

**CITY OF TUCSON, an incorporated municipality, Defendant-Appellee.**

**No. 78–1251.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 14, 1980.

Decided Nov. 23, 1981.

William E. Morris, Tucson, Ariz., for plaintiff-appellant.

Thomas J. Wilson, Tucson, Ariz., for defendant-appellee.

Before HUG, FLETCHER and FARRIS, Circuit Judges.

HUG, Circuit Judge:

This is an action brought by the appellant, William Fisher, alleging that the City of Tucson, Arizona violated section 503 of the Rehabilitation Act of 1973 in failing to hire him as an industrial electronics technician. Section 503 mandates that "[a]ny contract in excess of $2,500 entered into by any Federal department or agency . . . contain a provision requiring that, in employing persons to carry out such contract the party contracting with the United States shall take affirmative action to employ and advance in employment qualified handicapped individuals." 29 U.S.C. § 793(a).[1] Fisher, who suffers from a physical handicap, argues that the City of Tucson violated section 503, first by discriminating against him on the basis of his handicap, and second by failing to fulfill its contractual obliga-tion to take affirmative action to employ qualified handicapped individuals.

Section 503 does not expressly provide that its provisions may be enforced through a private right of action. Rather, the statute provides that a handicapped individual who believes that a government contractor has failed to comply with its provisions may file a complaint with the Department of Labor. 29 U.S.C. § 793(b).[2] The district court, finding that an implied private right of action did not exist under section 503, dismissed Fisher's complaint for failure to state a claim. Thus the sole issue before us on appeal is whether we may find an implied right of action in section 503. Because we find insufficient legislative intent to create a private right of action to enforce the mandates of section 503, we affirm the judgment of the district court.

## I

### Facts

For purposes of this appeal, we must assume the truth of the facts alleged in Fisher's amended complaint. The complaint states that Fisher has considerable educational and practical experience in the field of electronics. He received the highest score on a civil service test administered by the City of Tucson (the "City") for the position of "industrial electronics technician I," and was subsequently invited, with two other persons, to a final interview. During his interview, Fisher told officials that he had a lower back injury, for which treat-

1. 29 U.S.C. § 793(a) provides:
   Any contract in excess of $2,500 entered into by any Federal department or agency for the procurement of personal property and non-personal services (including construction) for the United States shall contain a provision requiring that, in employing persons to carry out such contract the party contracting with the United States shall take affirmative action to employ and advance in employment qualified handicapped individuals as defined in section 706(7) of this title. The provisions of this section shall apply to any subcontract in excess of $2,500 entered into by a prime contractor in carrying out any contract for the procurement of personal property and nonpersonal services (including construction) for the United States. The

President shall implement the provisions of this section by promulgating regulations within ninety days after September 26, 1973.

2. 29 U.S.C. § 793(b) provides:
   If any handicapped individual believes any contractor has failed or refuses to comply with the provisions of his contract with the United States, relating to employment of handicapped individuals, such individual may file a complaint with the Department of Labor. The Department shall promptly investigate such complaint and shall take such action thereon as the facts and circumstances warrant, consistent with the terms of such contract and the laws and regulations applicable thereto.

ment was required. One of the other applicants was hired. The complaint states that Fisher was told that he was denied employment due to his physical disability. Fisher claims that he is well-qualified for the job and physically capable of performing it.

Shortly thereafter, Fisher filed a complaint with the Department of Labor ("DOL"). The DOL investigated the complaint and determined that Fisher was a "handicapped individual" within the meaning of 29 U.S.C. § 706(7) and that the City was a federal contractor within the definition of section 503, but that the City had not violated section 503 in refusing to hire Fisher. The DOL determined that no further action on Fisher's complaint was warranted.[3] Fisher then instituted this proceeding.

## II

### Analysis

The Supreme Court has stated that four factors are relevant in determining whether a private right of action may be implied to enforce the provisions of a statute which does not expressly provide such a right:

First, is the plaintiff "one of the class for whose *especial* benefit the statute was enacted,"—that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

*Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975) (citations omitted). In a more recent case, the Court has emphasized that in applying the *Cort v. Ash*

analysis, the ultimate issue remains "whether Congress intended to create a private right of action." *State of California v. Sierra Club*, 451 U.S. 287, 293, 101 S.Ct. 1775, 1779, 68 L.Ed.2d 101, 107 (1981). It cannot be overemphasized that the "ultimate question is one of congressional intent, not one of whether this Court thinks that it can improve upon the statutory scheme that Congress enacted into law." *Touche Ross & Co. v. Redington*, 442 U.S. 560, 578, 99 S.Ct. 2479, 2490, 61 L.Ed.2d 82 (1979). We examine the *Cort v. Ash* factors, then, in an attempt to determine from the statute and the circumstances surrounding its enactment whether Congress intended to create a private right of action.

A. Is the plaintiff one for whose benefit the statute was enacted?

In *California v. Sierra Club*, the Court emphasized that the first *Cort v. Ash* factor requires not only a consideration of whether the plaintiff is a member of the class for whose benefit the statute was enacted, but also whether "Congress intended to confer federal rights upon those beneficiaries." 451 U.S. at 294, 101 S.Ct. at 1779, 68 L.Ed.2d at 108. Otherwise, the Court stated, any crime victim "would be deemed an especial beneficiary of the criminal statute's proscription." *Id.* 451 U.S. at 294, 101 S.Ct. at 1779, at 107.

In *Rogers v. Frito-Lay, Inc.*, 611 F.2d 1074 (5th Cir.), *cert. denied*, 449 U.S. 889, 101 S.Ct. 246, 66 L.Ed.2d 115 (1980), in which a divided panel of the Fifth Circuit concluded that section 503 does not create a private right of action, the court found that the statute did not confer a right in favor of handicapped individuals. *Id.* at 1079–80. While we agree with the Fifth Circuit's ultimate conclusion that section 503 does not create a private right of action, we do find that the statute creates a federal right on behalf of the protected class. Clearly the statute was intended to benefit handicapped persons. The statute also provides that any handicapped individual who be-

**3.** The administrative enforcement scheme is provided at 41 C.F.R. §§ 60–741.1 through 60– 741.54.

lieves that a contractor is not in compliance with his contract may file a complaint with the DOL, which has investigatory and enforcement powers. 29 U.S.C. § 793(b).[4] It seems apparent that Congress did intend to confer some federal rights on handicapped individuals. However, the fact that these rights were conferred on handicapped individuals does not necessarily lead us to conclude that Congress intended to create a private right of action to enforce them. To the contrary, Congress could well have intended to limit the exercise of these rights to the context of the administrative enforcement scheme. The question whether Congress did so limit the exercise of these rights is resolved through an examination of the second and third *Cort v. Ash* factors.

### B. Expressions of Legislative Intent

#### 1. The Statute

In attempting to determine whether Congress created a private right of action under Section 503 of the Rehabilitation Act, it is helpful to compare it to section 504 of the Act, 29 U.S.C. § 794,[5] which has been held to imply a private right of action. *Kling v. County of Los Angeles*, 633 F.2d 876 (9th Cir. 1980). Section 503 does not, on its face, prohibit discrimination against handicapped persons. Rather, it requires that certain employers who contract with the federal government take affirmative action to employ and promote qualified handicapped individuals. Section 504 of the Act, on the other hand, specifically prohibits discrimination against handicapped individuals in any program or activity receiving federal financial assistance.

To the extent that section 503 does not expressly prohibit discrimination against the handicapped, it is unlike both section 504 and Title IX, which the Supreme Court found in *Cannon v. University of Chicago*, 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979), to have created an implied right of action. Significantly, the Court stated in *Cannon* that "[t]here would be far less reason to infer a private remedy in favor of individual persons if Congress, instead of drafting Title IX with an unmistakable focus on the benefited class, had written it simply as a ban on discriminatory conduct by recipients of federal funds or as a prohibition against the disbursement of public funds to educational institutions engaged in discriminatory practices." *Id.* at 690–93, 99 S.Ct. at 1954–56 (footnote omitted). While *Cannon* does not require us to find this consideration determinative in the instant case, clearly section 503, unlike section 504, is similar to the hypothetical statutes distinguished from Title IX by the Court in *Cannon*.

A consideration of perhaps even greater significance here is that Congress has not expressly made discrimination against handicapped individuals unlawful in section 503, but rather has mandated that contractors discriminate *in favor of* handicapped individuals by implementing affirmative action programs. It is no doubt true that the affirmative action requirement impliedly mandates that contractors not discriminate against the handicapped. In addition, regulations promulgated pursuant to section 503 require that the contractor agree not to discriminate against handicapped persons.[6] At the same time, the affirmative action

---

4. The text of 29 U.S.C. § 793(b) is reproduced in n.2 *supra.*

5. 29 U.S.C. § 794 provides:
   No otherwise qualified handicapped individual in the United States, as defined in section 706(7) of this title, shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service. The head of

each such agency shall promulgate such regulations as may be necessary to carry out the amendments to this section made by the Rehabilitation, Comprehensive Services, and Developmental Disabilities Act of 1978. Copies of any proposed regulation shall be submitted to appropriate authorizing committees of the Congress, and such regulation shall take effect no earlier than the thirtieth day after the date on which such regulation is so submitted to such committees.

6. 41 C.F.R. § 60–741.4.

requirement reflects congressional concern for the class, rather than the individual. The administrative remedy provision provides support for this interpretation in specifying that when a handicapped person believes that a contractor is not in compliance with the provision of his contract relating to the employment of handicapped *individuals,* he or she may file a complaint with the DOL. The Department presumably would then investigate the contractor to determine whether an adequate affirmative action program is in force. It would be going substantially further for us to conclude that an individual may file a private action to force a contractor to discriminate in his favor.

For example, in this case Fisher has complained both that he has been discriminated against and that the City is not in compliance with the affirmative action clause. It is unclear how we might find an implied right of action to enforce the nondiscrimination component of section 503, and not find the same right to enforce the affirmative action component, especially in light of the fact that discrimination is not even expressly prohibited by the statute. We are aware of no situation in which Congress has expressly created a private right of action in favor of individuals to enforce an affirmative action law. It seems to us we would be venturing too far into the legislative domain to find that Congress created such a right by implication. In addition, in the absence of congressional guidance, many questions regarding such a right of action are unanswered. Would the aggrieved party sue the contractor for failing to implement a program, or the United States for failing to adequately supervise the contractor? Would the individual seek personal relief or, instead, a court order that the affirmative action plan be implemented? Finally, the plain language of the statute reflects that Congress left the supervision of contract compliance with the DOL.[7] These factors all lead to the conclusion that Congress did not intend to create a private right of action to enforce section 503.

### 2. Legislative History

A review of the pertinent legislative history of section 503 leaves us unable to conclude that Congress intended to create a private right of action. As is noted in both the majority and dissenting opinions in *Rogers v. Frito-Lay,* there was very little discussion of section 503 at the time of the statute's enactment. Most of the debate at that time was focused on the spending provisions relating to other sections of the Act, although Senator Cranston did introduce a statement by Senator Humphrey to the effect that he believed that sections 503 and 504 would accomplish what he had earlier sought to achieve through amendments to Titles VI and VII of the Civil Rights Act of 1964. 118 Cong.Rec. 32310 (1972).

Congress amended the Act in 1974, but the amendment dealt principally with the definition of a handicapped individual, and did not relate to the substance of section 503 or 504. There was discussion in a conference report of the manner and means of the enforcement of these sections, although the primary was on section 504. *See* S.Conf.Rep. No. 93–1270, 93d Cong., 2d Sess. 25–28 (1974). The report states that section 504 was patterned after Titles VI and IX, and that section 504 created a private right of action. In the same report, it is stated that sections 503 and 504 are to be administered in such a way that a consistent, uniform and effective federal approach to discrimination against the handicapped could result. In addition, Senator Stafford stated on the floor of the Senate that it was the intent of the Senate Committee on Labor and Public Welfare that the enforce-

---

7. Because the issue was not raised before us, we reach no conclusion regarding the question whether Fisher might bring an action against the Department of Labor under the Administrative Procedure Act, 5 U.S.C. § 702, alleging that the Department has failed to enforce the Act's affirmative action requirement. *See Legal Aid*

*Society of Alameda County v. Brennan,* 608 F.2d 1319, 1330–32 (9th Cir. 1979), *cert. denied, sub. nom. Chamber of Commerce of the United States v. Legal Aid Society of Alameda County,* 447 U.S. 921, 100 S.Ct. 3010, 65 L.Ed.2d 1112 (1980).

ment of sections 503 and 504 would be similar to that under Title VI of the Civil Rights Act and Title IX of the Educational Amendments of 1972. 120 Cong.Rec. 30551 (1974).

We find none of these statements decisive regarding section 503, however. A consistent, uniform approach to discrimination does not require that the statute be enforced through a private right of action. Similarly, the statement that the enforcement of sections 503 and 504 should be "similar to" that under Titles VI and IX falls short of giving a clear indication that a private remedy was intended.

In 1978 Congress gave a clear expression of its assumption that it had created a private right of action in enacting section 503 five years earlier through the addition of a new section, section 505, which provided that a prevailing party would be awarded attorney's fees, at the trial court's discretion, in any action to enforce the chapter. The Senate report specifically refers to the applicability of section 505 to section 503. S.Rep.No. 95–890, 95th Cong., 2d Sess. 19 (1978), U.S.Code Cong. & Admin.News 1978, p. 7312. Senator Bayh and Senator Cranston both stated that it was their understanding that private suits were authorized under all of Title V. 124 Cong.Rec. S 15593 (daily ed. Sept. 20, 1978).

As acknowledged by both the majority and dissenting opinions in *Rogers v. Frito-Lay*, the 1978 amendment and the circumstances surrounding its enactment give no evidence of congressional intent to amend section 503 to create a private right of action, but rather reflect Congress's understanding or assumption that a private right of action had been created in 1973. The fact that many of those persons involved in enacting section 505 held this view lends credence to their interpretation of the statute.

However, while the interpretation of an Act of an earlier Congress by a later one "does shed some light on the intent of the enacting Congress," it is clear that the interpretation "is not by any means dispositive." *Chrysler Corp. v. Brown*, 441 U.S. 281, 299–300, 99 S.Ct. 1705, 1716, 60 L.Ed.2d 208 (1979). While we give weight to the 1978 amendment, we do not find that it compels us to conclude that a private right of action was created when the statute was originally enacted. The 1978 amendment and the circumstances surrounding its enactment are the only clear indications that a private right of action does exist under section 503. There is no other legislative history which clearly supports that conclusion. Notably absent is any indication that Congress intended to launch into a new area by providing a private right of action to enforce an affirmative action law. Nor is there an indication of how such a right would be enforced. Taken together, the express language of the statute and the legislative history surrounding the Act and its subsequent amendments lead us to conclude that Congress did not intend to create a private right of action when it enacted section 503.

C. Is a private remedy consistent with the underlying purpose of the legislative scheme?

In his dissent in *Rogers v. Frito-Lay*, Judge Goldberg argued that a private remedy would complement the administrative enforcement scheme. In support of his position, he cited the Department of Labor's position that section 503 does imply a private right of action, and that the prospect of litigation would have the effect of promoting rather than hindering the Department's enforcement efforts. 611 F.2d at 1102–1107. The majority in *Rogers*, on the other hand, found that "the provision of an express administrative remedy ... creates at least some basis to conclude that a private right of action would be inconsistent with the purposes of the legislative scheme." *Id.* at 1084.

In determining whether a private right of action would be consistent with the legislative scheme we consider both the presence of the administrative enforcement mechanism and the nature of section 503's mandate: that contractors undertake affirmative action to employ and promote handi-

capped individuals. We believe it is reasonable to conclude that Congress intended to leave the supervision of the affirmative action programs to the DOL. As we discussed above, it is unclear what role an individual would have in seeking to enforce the affirmative action provision in a private suit.

For example, in this case Fisher brought his suit after the Department found he was not qualified for the position with the City. Were we to find a private right of action implied in section 503, we would not be reviewing the agency determination. Rather, on remand, the district court presumably would have to hear evidence regarding both Fisher's claim that he was discriminated against and his assertion that the City has failed to implement an affirmative action program. The first inquiry would constitute a duplication of the Department's already-completed investigation; we question whether that result was intended by Congress. The second inquiry would require us to review the City's affirmative action plan. Again, it seems reasonable to us that Congress meant what it said in enacting the statute—that this investigatory function was left to the Department. We thus conclude that a private right of action is inconsistent with the scheme provided by Congress. It is not the function of the court to consider whether the current enforcement mechanism is the best method to effectuate the purposes of the Act; our function is to determine the intent of Congress.

D.  Is the cause of action one traditionally relegated to state law?

This area is clearly one of federal concern. Since the civil war, individual rights have been a primary concern of the federal government.

### III

#### Conclusion

In summary, in determining whether Congress intended to create a private right of action, we have employed the framework of analysis suggested by the Supreme Court

in *Cort v. Ash.* We find that in enacting section 503, Congress did intend to create federal rights on behalf of handicapped individuals and that the rights of the handicapped are properly the concern of the federal government. These findings are not determinative, however, regarding the question of whether Congress intended to provide a private right of action to enforce section 503, for they would be equally consistent with the conclusion that Congress meant to provide only the administrative enforcement scheme. Indeed, a consideration of the other two *Cort v. Ash* factors leads us to conclude that Congress did not intend to create a private right of action.

The statute does not, on its face, prohibit discrimination. Instead, it requires that contractors implement affirmative action programs. Further, Congress has provided an administrative enforcement scheme with which the exercise of a private right of action might well conflict. Finally, we are unable to discern a clear indication in the legislative history that Congress intended to create a private right of action. Under these circumstances, we decline to imply what Congress failed to expressly provide.

The judgment of the district court is AFFIRMED.

FLETCHER, Circuit Judge, concurring and dissenting:

I dissent from the majority's holding that handicapped individuals do not have a private right of action under section 503 of the Rehabilitation Act of 1973, 29 U.S.C. § 793 (1976 & Supp. II 1978). I agree with the majority that section 503 creates no explicit remedy authorizing handicapped individuals to sue federal contractors in federal court. I likewise agree that the court must undertake an analysis along the line of that pursued by the Supreme Court in *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), to determine whether a private right of action should be implied. The majority concludes that the first and fourth criteria of the quadripartite test spelled out in *Cort*

868

*v. Ash* are met.[1] To this extent, I concur in the majority's opinion.

The second part of the *Cort v. Ash* test is an inquiry into whether there is "any indication of legislative intent, explicit or implicit, either to create [a private right of action] or to deny one." 422 U.S. at 78, 95 S.Ct. at 2088.[2] Contrary to the majority's view, I would find the requisite congressional intent to create a private judicial remedy.

In 1978, Congress amended the Rehabilitation Act to add section 505, 29 U.S.C. § 794a (Supp. II 1978). Subsection (b) of section 505 provides that:

> In any action or proceeding to enforce or charge a violation of a provision of this subchapter, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

In 1978, at least, Congress believed that a private right of action was available to enforce section 503. In fact, it believed that it was modifying the section 503 remedy by providing attorney's fees and costs to the

1. By contrast, other circuits that have considered whether section 503 creates a private right of action have denied that section 503 was enacted for the especial benefit of handicapped persons, the first *Cort* factor; the same circuits have also found that the fourth *Cort* factor is met, *i. e.*, the action is not one traditionally relegated to state law. *See Davis v. United Airlines*, 662 F.2d 120 at 122–123, 127 (2d Cir. 1981); *Simpson v. Reynolds Metals Co.*, 629 F.2d 1226, 1238 n.23, 1239–40 (7th Cir. 1980); *Rogers v. Frito-Lay, Inc.*, 611 F.2d 1074, 1078 n.4, 1079–80 (5th Cir.), *cert. denied*, 449 U.S. 889, 101 S.Ct. 246, 66 L.Ed.2d 115 (1980).

2. Congress gave little attention to the section at the time of its enactment. Discussion of the Rehabilitation Act focused primarily on federal programs for the handicapped. *See* S.Rep. No. 93–318, 93d Cong. 1st Sess., *reprinted in* [1973] U.S. Code Cong. & Ad. News 2076. The legislative history of the 1974 amendments to the Rehabilitation Act provide only slightly more guidance. The discussion of the 1974 amendments focused on redefining the term "handicapped individual." The Conference Report on the 1974 Amendments, however, clearly indicated a congressional understanding that section 504 of the Act permits a "judicial remedy through private action." S.Conf.Rep. No. 93–1270, 93d Cong.2d Sess., 27 (1974). Significantly, the report goes on to indicate that sec-

prevailing party, other than the Government. *See* H.R.Rep. No. 95–1149, 95th Cong., 2d Sess., *reprinted in* [1978] U.S. Code Cong. & Ad. News 7312, 7332. In *Red Lion Broadcasting Co. v. Federal Communications Comm'n*, 395 U.S. 367, 89 S.Ct. 1794, 23 L.Ed.2d 371 (1969), the Supreme Court stated that "[s]ubsequent legislation declaring the intent of an earlier statute is entitled to great weight in statutory construction." *Id.* at 380–81, 89 S.Ct. at 1801–02; *accord, Consumer Product Safety Comm'n v. GTE Sylvania*, 447 U.S. 102, 118 n.13, 100 S.Ct. 2051, 2061 n.13, 64 L.Ed.2d 766 (1980); *see Andrus v. Shell Oil*, 446 U.S. 657, 666 n.8, 100 S.Ct. 1932, 1938 n.8, 64 L.Ed.2d 593 (1980); *Montana Wilderness Ass'n v. U.S. Forest Service*, 655 F.2d 951, 957 (9th Cir. 1981). The majority agrees that Congress intended section 505 to provide attorney's fees in a private action to enforce section 503. 663 F.2d at 865–866. But it does not find the 1978 congressional interpretation of section 503 a persuasive indicator of what congressional intent was in 1973 when section 503 was enacted.

tion 503 should be administered consistently with section 504, thereby suggesting that a private right of action would be consistent with Congress' purpose in section 503. The Senate debate remarks of Senator Robert Stafford, a sponsor of the original act and the 1974 amendment, confirm this interpretation of section 503. Senator Stafford stated that enforcement of sections 503 and 504 would parallel enforcement of section 601 of the Civil Rights Act and section 901 of the Education Amendments of 1972. 120 Cong.Rec. 30551 (1974). Both section 601 and section 901 include a private right of action. *See Cannon v. University of Chicago*, 441 U.S. at 694–98, 717, 99 S.Ct. at 1956–58, 1968 (discussing the implied private right of action under section 601 and finding such a right under section 901).

To the extent that the Supreme Court discounts the use of subsequent legislative history to imply a private cause of action in *Cannon*, 441 U.S. at 686 n.7, 99 S.Ct. at 1952 n.7, that case is distinguishable. In *Cannon* the Court had not only subsequent legislative history but also extensive contemporaneous legislative history on which to rely. By contrast, in this case we have scant contemporaneous legislative history but replete subsequent history and legislation. Consequently, there is more reason here to turn to the later history and legislation.

I disagree strongly. I rely on more than indirect subsequent history interpreting an earlier statute. *Compare Consumer Products Safety Comm'n v. GTE Sylvania*, 447 U.S. at 118 n.13, 100 S.Ct. at 2061 n.13. Section 505 is premised on the interpretation of section 503 that I urge,[3] and committee reports on section 505 confirm that Congress understood section 503 to include a private enforcement right.[4] Significantly, the 1978 committees that reported on section 505 and the 1973 committees responsible for section 503 were composed of many of the same members of Congress. *Compare* [1978] U.S. Code Cong. & Ad. News XCIX, CXVII *with* [1973] U.S. Code Cong. & Ad. News LXXXIV, XCVIII. Thus both

section 505 and the 1978 committee reports are entitled to substantially more weight than the majority accords them.[5]

Had the majority not found that section 503 was passed for the especial benefit of handicapped persons, its reluctance to find a private judicial remedy could be more easily understood. However, when the first *Cort* factor has been met, as the majority agrees it has, 663 F.2d at 863–864, "it is not necessary to show an intention to *create* a private cause of action, although an explicit purpose to *deny* such cause of action would be controlling." *Cannon v. University of Chicago*, 441 U.S. 677, 694, 99 S.Ct. 1946, 1956, 60 L.Ed.2d 560 (1979) (quoting *Cort*, 422 U.S. at 82, 95 S.Ct. at 2090) (emphasis

3. Section 505 explicitly presumes private judicial actions. It provides that "the court," not the Department of Labor, may award attorney's fees. Further, section 505 precludes an award of attorney's fees to the United States and hence to the Office of Federal Contract Compliance Programs. Thus the only persons that may benefit from the section 505 attorney's fees provision under section 503 are individuals who prevail in a private judicial action to enforce section 503. *See Davis v. United Airlines*, 662 F.2d 120, at 128–129 (2d Cir. 1981) (Kaufman, J., dissenting).

4. The report on the Senate bill, the source of section 505, states:

> The committee believes that the rights extended to handicapped individuals under Title V, that is, Federal government employment, physical accessibility in public buildings, *employment under federal contracts*, and non-discrimination under federal grants—are and will continue to be in need of constant vigilance by handicapped individuals to assure compliance and *the availability of attorney's fees should assist in vindicating private rights of action in the case of section 502 and 503 cases*, as well as those arising under section 501 and 504.

S.Rep. No. 95–890, 95th Cong. 2d Sess. 19 (1978) (emphasis added). This report provides unimpeachable evidence that Congress intended section 505 to provide attorney's fees in a private suit to enforce section 503. Therefore, Congress must have interpreted section 503 to include a private enforcement right.

5. The majority also argues that we should ignore Congress' interpretation of section 503 because section 503 does not parallel several anti-discrimination statutes for which private rights of action have been implied. I agree that section 503 does not parallel these statutes, but I am not sure what significance to draw from

this distinction. The fact that private rights of action have been inferred from other statutes differently structured does not mean that a private right of action cannot be inferred from section 503.

To the extent that the majority's comparison of statutory structures is meant to invoke the distinction between right-creating and duty-creating statutes, that distinction is inapplicable here. In *Cannon* the Supreme Court observed that it is more willing to imply a cause of action under a right-creating statute than under a duty-creating statute. 441 U.S. at 690 n.13, 99 S.Ct. at 1954. Each court of appeals to consider fully section 503 has invoked this advice to conclude that no cause of action should be implied under section 503, a duty-creating statute. *See, e. g., Davis v. United Airlines*, 662 F.2d 120, at 122–123 (2d Cir. 1981); *Simpson v. Reynolds Metals Co.*, 629 F.2d 1226, 1239 (7th Cir. 1980); *Rogers v. Frito-Lay, Inc.*, 611 F.2d 1074, 1079–80 (5th Cir. 1980). Recourse to the right/duty distinction is not persuasive, however, in an analysis of section 503. First, the Supreme Court did not suggest that a cause of action can never be implied under a duty-creating statute. *Cannon*, 441 U.S. 690 n.13, 99 S.Ct. at 1954 n.13. In fact it can. *Id.* (citing, inter alia, *J. I. Case Co. v. Borak*, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964) and *Machinists v. Central Airlines*, 372 U.S. 682, 83 S.Ct. 956, 10 L.Ed.2d 67 (1963)). Moreover, section 503 presents a more compelling case for implying a cause of action under a duty-creating statute than either *Borak* or *Central Airlines*. In both of those cases, the duty ran to the general public; in section 503 the duty runs to a specially benefitted class. Consequently, section 503 is more closely akin to the Title IX provision interpreted in *Cannon* than to general duty-creating statutes. *See Rogers*, 611 F.2d at 1089–90 (Goldberg, J., dissenting).

in original). *See Northwest Airlines v. Transport Workers Union,* 451 U.S. 77, 101 S.Ct. 1571, 1580–81, 67 L.Ed.2d 750 (1981); *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 18, 100 S.Ct. 242, 246, 62 L.Ed.2d 146 (1979). There is not a shred of evidence to indicate that Congress intended to *deny* a private right to enforce section 503. There is, however, strong and unequivocal evidence, which is entitled to "great weight," that Congress intended to *create* an implied right of action to enforce section 503. The absence of any intent to deny a private cause of action together with the clear congressional intent to create such a cause of action provides compelling evidence that favors implication of a private judicial remedy under section 503.

The third inquiry under *Cort* is whether the "underlying purposes of the legislative scheme" are consistent with private enforcement. 422 U.S. at 78, 95 S.Ct. at 2088. The majority concludes that a private right of action would be inconsistent with the legislative scheme established by section 503 because section 503 contains provisions for investigation and enforcement by the Department of Labor (DOL). 663 F.2d at 866–867. I find this view puzzling. Dual enforcement schemes are commonplace. Title VI and Title IX both include provisions for administrative enforcement, *see* 42 U.S.C. § 2000d–1 (1976) (Title VI); 20 U.S.C. § 1682 (1976) (Title IX), but private rights of action have nevertheless been inferred from both statutes. *See also* 42 U.S.C. § 2000e–5(b) (1976) (Title VII) (allowing private right of action after exhausting administrative remedies); *Allen v. State Board of Elections,* 393 U.S. 544, 89 S.Ct. 817, 22 L.Ed.2d 1 (1969) (finding private right of action under Voting Rights Act of 1965, 42 U.S.C. § 1973 (1976), despite provisions for enforcement by Attorney General).[6]

The majority also argues that a private cause of action under section 503 would be difficult to administer. 663 F.2d at 866–867. This may or may not be the case, but is in any event irrelevant. The inquiry to be made is whether the legislative scheme and private enforcement are consistent, *Cort,* 422 U.S. at 78, 95 S.Ct. at 2088, not whether the two schemes are difficult or burdensome to administer. On the question of consistency, some deference is due the agency responsible for enforcing section 503 (here the Department of Labor). *See, e. g., Miller v. Youakim,* 440 U.S. 125, 144, 99 S.Ct. 957, 968, 59 L.Ed.2d 194 (1979); *Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965); *Takazato v. F.M.C.,* 633 F.2d 1276, 1278 (9th Cir. 1980). The DOL finds no inconsistency between private and administrative enforcement; rather, it has expressed repeatedly its opinion that a private right of action would complement the administrative mechanism.[7]

Nor should we overlook the striking similarities in the legislative schemes of section 503 and Title IX. For example, both Title IX and section 503 have similar objectives. Both confer benefits on a specific class of persons, neither section expressly affords private relief for the complainant, and both sections grant the administrative agency wide investigatory discretion.[8] In *Cannon,* the Supreme Court found an implied right of action consistent with the Title IX enforcement scheme. *Cannon,* 441 U.S. at 717, 99 S.Ct. at 1968. I find no reason to reach a different result here in respect to section 503.

### Conclusion

Just as the court in *Cannon* found with respect to Title IX, I find with respect to

---

6. If Congress had wished to make the DOL enforcement provisions exclusive, it could have said so explicitly. For example, the enforcement article of the Age Discrimination Act, 42 U.S.C. § 6104(e) (1976), provides that "the provisions of this section shall be the exclusive remedy for the enforcement of the provisions of this chapter." No such "exclusive remedies" provision appears in section 503.

7. *See Rogers,* 611 F.2d at 1103, 1108–09 (Goldberg, J., dissenting & Appendix); *Chaplin v. Consolidated Edison Co.,* 482 F.Supp. 1165, 1172 (S.D.N.Y.1980).

8. *See Rogers,* 611 F.2d at 1104–05 (Goldberg, J., dissenting).

section 503 of the Rehabilitation Act, "the atypical situation in which *all* of the circumstances that the Court has previously identified as supportive of an implied remedy are present." *Cannon*, 441 U.S. at 717, 99 S.Ct. at 1968 (emphasis in original). I conclude that an implied private right of action exists to enforce section 503 of the Rehabilitation Act. Accordingly, I would reverse the district court's dismissal of appellant's complaint.