Lee **MEYERSON**, Plaintiff,

v.

The **STATE OF ARIZONA** et al., Defendants.

**No. Civ. 80–715 Phx. WPC.**

United States District Court, D. Arizona.

Feb. 12, 1981.

Charles D. Roush and Gerrie Apker Kurtz, of Treon, Warnicke & Roush, P. A., Phoenix, Ariz., for plaintiff.

Stephen K. Smith, Asst. Atty. Gen. for the State of Arizona, Phoenix, Ariz., for defendants.

## MEMORANDUM AND ORDER

COPPLE, District Judge.

Dr. Lee Meyerson, Professor of Psychology at Arizona State University, alleges that he is the victim of discrimination because of his handicap. Dr. Meyerson asserts causes of action under § 503 and § 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 793–794 (Supp. II 1978), the Revenue Sharing Act, 31 U.S.C. § 1242 (1976), and 42 U.S.C. § 1983 (1976). The defendants have moved for summary judgment on the following grounds:

(1) there is no private right of action under § 503 of the Rehabilitation Act;

(2) the plaintiff has failed to state a claim under § 504 because he is not the beneficiary of any program or activity that receives federal funds;

(3) the plaintiff has failed to state a claim under the Revenue Sharing Act because ASU does not receive any revenue sharing funds;

(4) the plaintiff fails to state a claim under § 1983 because he has not been deprived of any federal statutory right.

For the purposes of this motion, it is not necessary for this Court to determine whether Dr. Meyerson is an "otherwise qualified handicapped person" within the meaning of the Rehabilitation Act, nor whether he has been the victim of discrimination.

*Section 503 Claim*

Section 503, 29 U.S.C. § 793 (Supp. II 1978), requires that any contract in excess of $2,500 entered into by any federal department or agency for the procurement of personal property or nonpersonal services "shall contain a provision requiring that, in employing persons to carry out such contract, the [contracting party] shall take affirmative action to employ and advance in employment qualified handicapped individuals . . ."

The past several years has seen considerable litigation over whether this provision confers a private implied right of action upon handicapped persons. No less than three circuit courts have determined that § 503 provides no such right of action. *See Simpson v. Reynolds Metals Co.,* 629 F.2d 1226 (7th Cir. 1980); *Rogers v. Frito Lay, Inc.,* 611 F.2d 1074 (5th Cir.), *cert. denied* —— U.S. —— 101 S.Ct. 246, 66 L.Ed.2d 115 (1980); *Hoopes v. Equifax, Inc.,* 611 F.2d 139 (8th Cir. 1979). This Court is aware that three district courts within the Ninth Circuit have held to the contrary. *California Paralyzed Veterans Ass'n v. F. C. C.,* 496 F.Supp. 125 (C.D.Cal.1980); *Clarke v. FELEC Services, Inc.,* 489 F.Supp. 165

(D.Alaska 1980); *Hart v. County of Alameda*, 485 F.Supp. 66 (N.D.Cal.1979). A court within this district has determined that § 503 provides no implied private right of action. *Fisher v. City of Tucson*, CIV. 77–37 TUC (D.Ariz.1977). This Court has been informed that the Ninth Circuit heard oral argument in *Fisher* in May, 1980, and that a decision by the panel will be forthcoming in the near future.

In view of the exhaustive treatment of this issue by the cases cited above, this Court's discussion will be comparatively brief.

█ Initially, it must be noted that recent Supreme Court decisions reflect a restrictive approach to implying private rights of action. *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979) [*TAMA*]; *Touche Ross & Co. v. Redington*, 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979). *See Jablon v. Dean Witter & Co.*, 614 F.2d 677, 679 (9th Cir. 1980). Whereas the test enunciated in *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), considered Congressional intent as merely one factor to be balanced against three others, *Touche Ross* and *TAMA* indicate that Congressional intent must be the center of inquiry. *Touche Ross*, 442 U.S. at 575–76, 99 S.Ct. at 2488–89; *TAMA*, 444 U.S. at 23–24, 100 S.Ct. at 248–249. Whether or not Congress intended to create a private right of action is basically a matter of statutory construction. It is not enough that Congress intended to benefit a particular class of people. Rather, the focus is upon whether Congress intended that a statute's obligations be enforced through private litigation. *TAMA*, 444 U.S. at 17–18, 100 S.Ct. at 246–247.

█ An examination of § 503's language reveals that it is not the type of statute that implicates a private right of action. By its terms, it neither creates or alters civil liabilities, *see TAMA*, 444 U.S. at 18–19, 100 S.Ct. at 246–247, nor does it proscribe certain conduct. *See Touche Ross*, 442 U.S. at 569, 99 S.Ct. at 2485. These cases indicate that a private right of action may be implied if Congress intended to confer substantive rights upon private parties, but failed to provide any federal remedy with which to enforce these rights. *See Cannon v. University of Chicago*, 441 U.S. 677, 699–701, 99 S.Ct. 1946, 1958–1960, 60 L.Ed.2d 560 (1979); *Montgomery v. American Airlines, Inc.*, 637 F.2d 607, 15 Av.Cas. 18,272 (9th Cir. 1980) ("There must be a showing that either the statute proscribes the conduct complained of or that the statute by its terms grants private rights to any identifiable class). The language of § 503 merely requires federal agencies to include an affirmative action covenant in certain procurement and service contracts. *See Simpson*, 629 F.2d at 1239. This point is emphasized when one compares § 503 to the right creating language of § 504. *See Rogers*, 611 F.2d at 1080.

Second, *TAMA* indicates that where a statute expressly provides a particular remedy or remedies, a court should be very reluctant to read others into it. 100 S.Ct. at 247. Section 503(b) permits an aggrieved person to pursue an administrative remedy.[1]

Nevertheless, even settled rules of statutory construction may yield to persuasive evidence of contrary legislative intent. *Securities Investor Protection Corp. v. Barbara*, 421 U.S. 412, 419, 95 S.Ct. 1733, 1738, 44 L.Ed.2d 263 (1975). Even the most vigorous proponents of an implied right of action admit that the legislative history of the Rehabilitation Act of 1973 is virtually silent in this regard. *See, e. g., Rogers v. Frito-Lay, Inc.*, 611 F.2d at 1094 (Goldberg, J., dissenting); *Hart v. County of Alameda*, 485 F.Supp. 66, 73 (N.D.Cal.1979). What the proponents of a private right of action point to, however, are the 1978 Amendments and the accompanying legislative history. In particular, in § 505 Congress added an attorneys fees provision for actions or proceedings brought under the Rehabilita-

---

1. Dr. Meyerson has pursued this administrative remedy, and the Department of Labor has found in his favor.

tion Act. 29 U.S.C. § 794a(b) (Supp. II 1978).

■ There is some legislative history of these amendments that Congress in 1978 believed that it had in 1973 created a private right of action under § 503. Nevertheless, the Supreme Court has made it quite clear that such after-the-fact legislative observations are in no sense part of the legislative history of the original statute. *Oscar Meyer & Co. v. Evans*, 441 U.S. 750, 758, 99 S.Ct. 2066, 2072–73, 60 L.Ed.2d 609 (1979). Rather, it is the intent of Congress that passed the statute that controls. *Id.* Although post-enactment treatment of a statute is evidence of the intent of Congress at the time of passage, such expressions may not be accorded the dignity of contemporaneous legislative history as section 503's proponents have done. *See id.* Such expressions are insufficient to overcome the language of the statute itself and the silence of contemporaneous legislative history.

Finally, the attorneys fees provision, § 505, does not explicitly point to § 503, but refers to that section only by implication. In contrast, § 505 provides that the rights, remedies, and procedures of Title VI of the Civil Rights Act of 1964 will be available to an action under § 504, and that certain provisions of Title VII will be available to actions under § 501 (federal employees). 29 U.S.C. § 794a(a) (Supp. II 1978). Whereas Congress in 1978 gave substance to actions under § 501 and § 504, it did not do so with respect to § 503. Of course, § 505 is only evidence that Congress in 1978 may have understood that in 1973 it had created a private right of action only under § 501 and § 504. Nevertheless, this is evidence contrary to legislative expressions in 1978 by individual Congressmen as to what Congress intended in 1973.

### Section 504 Claim

Section 504 provides that an otherwise qualified handicapped person may not, "solely by reason of his handicap, be excluded from participation in, be denied the benefits of, or be subjected to any discrimination under any program or activity receiv-

ing federal financial assistance." 29 U.S.C. § 794 (Supp. II 1978). The parties are in dispute as to what constitutes a federally funded program or activity. While the defendants urge this Court to focus upon ASU's Psychology Department, the plaintiff argues that a mere showing that ASU receives federal funding is sufficient.

Section 504 does not generally forbid discrimination against the handicapped by recipients of federal assistance. Instead, the discrimination must have some direct or indirect effect on handicapped persons in the program or activity receiving federal assistance. *Simpson v. Reynolds Metals Co.*, 629 F.2d at 1232. *See Carmi v. Metropolitan St. Louis Sewer Dist.*, 620 F.2d 672, 675 (8th Cir.), *cert. denied,* —— U.S. ——, 101 S.Ct. 249, 66 L.Ed.2d 117 (1980) (the plaintiff must be an intended beneficiary of federal assistance). In *Simpson*, the Seventh Circuit rejected the "unified entity approach" urged by the plaintiffs in that case and seemingly argued by Dr. Meyerson here. Under that theory, "once some part of an entity becomes involved in a program or activity receiving federal financial assistance, the employment practices of the entire institution would be subject to the coverage of § 504." *Id.* at 1233 n.12. Dr. Meyerson's argument that ASU is a federally funded activity or program must be rejected.

This is not to say that summary judgment must be granted. Although the defendants correctly have criticized the entity approach of the plaintiff's, the defendants' focus upon the Psychology Department is subject to the same criticism. The only difference is that the defendants have chosen a smaller entity.

The question is whether Dr. Meyerson benefits directly or indirectly from a federally funded program or activity. *Simpson*, 629 F.2d at 1232. Federally funded activities and programs at ASU must be identified and Dr. Meyerson's relationship to them must be analyzed before this Court can determine whether or not the nexus requirement of § 504 has been met. Certainly, it is relevant that Dr. Meyerson may

not receive any federal grants and that the Psychology Department may not receive any federal funding. These factors alone cannot be conclusive, however, that Dr. Meyerson is not a direct or indirect beneficiary of a federally funded program or activity. The record is simply incomplete at this point for the defendants to be able to establish the absence of a genuine issue of material fact as to the nexus requirement of § 504.

The second matter in dispute is whether Dr. Meyerson must establish that the primary object of the federal assistance is to provide employment. Section 505 provides that the remedies, procedures, and rights of Title VI are available to an aggrieved person under § 504. 29 U.S.C. § 794a(a)(2) (Supp. II 1978). Section 601 of Title VI contains language almost identical to § 504 of the Rehabilitation Act. Section 604 provides:

> Nothing contained in this subchapter shall be construed to authorize action under this subchapter by any department or agency with respect to any employment practice of any employer ... except where a primary objective of the Federal financial assistance is to provide employment.

42 U.S.C. § 2000d–3 (1976).

The great weight of authority holds that claims of employment discrimination under § 504 cannot be maintained unless a primary objective of the federally funded activity or program is to provide employment. *See, e. g., Carmi,* 620 F.2d at 674–75; *Trageser v. Libbie Rehabilitation Center, Inc.,* 590 F.2d 87, 88–89 (4th Cir. 1978), *cert. denied* 442 U.S. 947, 99 S.Ct. 2895, 61 L.Ed.2d 318 (1979); *Simpson,* 629 F.2d at 1233, 1234 & n.13. *Contra, Hart v. County of Alameda,* 485 F.Supp. at 71–73 (§ 604 limitations not applicable to private causes of action under § 504). Under *Trageser,* it is necessary to show either (1) that a primary objective of the federal aid is to provide employment or (2) that discrimination in employment necessarily causes discrimination against the primary beneficiaries of the federal aid. *Guertin v. Hackerman,* 496 F.Supp. 593, 596 (S.D.Tex.1980).

Due to the inadequate state of the record with respect to these issues at the present time, this Court must deny the defendants' motion for summary judgment without prejudice with respect to the § 504 claim.

*Revenue Sharing Act*

The parties are in dispute with regard to the requirement of a nexus between revenue sharing funds and the alleged employment discrimination. This issue is resolved by 31 U.S.C. § 1242(a)(2) (1976). That section provides that the antidiscrimination provisions of § 1242(a)(1) do not apply where the governmental entity in question establishes "by clear and convincing evidence, that the program or activity with respect to which the allegation of discrimination has been made is not funded in whole or in part" with revenue sharing funds. *See Harris v. White,* 479 F.Supp. 996, 1010 (D.Mass.1979). This Court need not determine this issue at the present time, because it is clear that Dr. Meyerson has failed to exhaust his administrative remedies.

■ Unlike the Rehabilitation Act, the Revenue Act contains an express right of action. 31 U.S.C. § 1244 (1976). The relief available is very limited. *See* 31 U.S.C. § 1244(b) (order or injunction with regard to suspension, termination, or repayment of revenue sharing funds). Unlike an action under § 504 of the Rehabilitation Act, the plaintiff must exhaust his administrative remedies before he may institute an action under the Revenue Sharing Act. *Compare* 31 U.S.C. § 1244(a) (1976) *with Kling v. County of Los Angeles,* 633 F.2d 876, 879 (9th Cir. 1980). Section 1244(d) and 31 C.F.R. § 51.64 (1980) provide that an action may not be brought if the complainant has not filed an administrative complaint with the Director of the Office of Revenue Sharing, 31 C.F.R. § 51.61 (1980), or with an agency with which the Director has an agreement under 31 C.F.R. § 51.74 (1980). The pleadings and the record do not indicate whether or not Dr. Meyerson has filed a complaint with the appropriate agency. Thus, the claim under the Revenue Sharing

Act must be dismissed without prejudice because it is not clear that Dr. Meyerson has exhausted his administrative remedies.

### Section 1983 Claim

The Supreme Court in *Maine v. Thiboutot*, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980), recently held that § 1983 provides a remedy for deprivations of rights conferred by federal statutory law as well as the Constitution. Where state action is present, it is unclear just how *Thiboutot* relates to the standards to be employed in determining whether a private right of action should be implied under a federal statute. Dr. Meyerson is probably correct in arguing that it is not necessary first to imply a private right of action under the federal statute in question before one can have a remedy under § 1983. *See Yapalter v. Bates*, 494 F.Supp. 1349, 1355–56 (S.D.N.Y.1980).

■ Nevertheless, it is clear that § 1983 is purely a remedial statute—it provides no substantive rights. *Chapman v. Houston Welfare Rights Organization*, 441 U.S. 600, 617–18, 99 S.Ct. 1905, 1915–16, 60 L.Ed.2d 508 (1979). Thus, before one can enjoy a right of action under § 1983, one must establish a violation of a federally protected right independent of § 1983. In order to have an action under § 1983, it is not enough to establish the violation of a federal statute. Rather, the statute violated must be one that confers a federal right upon the plaintiff. *See, e. g., Maine v. Thiboutot*, 100 S.Ct. at 2504, 2506 n.6 (§ 1983 protects rights, privileges, and immunities secured by federal law); *Cuyler v. Adams*, —— U.S. ——, 101 S.Ct. 703, 712–713, 66 L.Ed.2d 641 (1981) (§ 1983 provides remedy for rights enjoyed by state prisoners under Detainer Agreement); *Kennecott Corp. v. Smith*, 637 F.2d 481 (CCH) Fed.Sec. L.Rep. ¶ 97,731 n.5 (3d Cir. 1980) (§ 1983 protects rights protected by Williams Act); *Holmes v. Finney*, 631 F.2d 150, 154–55 (10th Cir. 1980) (§ 1983 provides remedy to persons deprived of a federal right); *Mrazek v. Suffolk County Bd. of Elections*, 630 F.2d 890, 899 (2d Cir. 1980) (§ 1983 secures persons against deprivation of rights and privileges created under law of United States).

■ As to § 503, the plaintiff fails to state a cause of action under § 1983 because, as explained above, § 503 confers no substantive rights upon handicapped persons. Whether or not Meyerson is a protected beneficiary under § 504 will determine whether or not § 504 confers upon him any substantive federal rights. As for the Revenue Sharing Act claim, Congress has provided a remedy under 31 U.S.C. § 1244. In *Great American Federal Savings & Loan Ass'n v. Novotny*, 442 U.S. 366, 373–78, 99 S.Ct. 2345, 2349–52, 60 L.Ed.2d 957 (1979), the Supreme Court held that the remedial provisions of 42 U.S.C. § 1985(c) cannot be invoked to redress violations of Title VII because the latter contains its own enforcement scheme. *See also Thiboutot v. Maine*, 100 S.Ct. at 2513 n.11 (Powell, J., dissenting). Similarly, the remedial provision of § 1983 cannot be used to circumvent the remedial provisions of the Revenue Sharing Act.

IT IS ORDERED:

1. The defendants' motion for summary judgment is granted as to the plaintiff's claim under § 503 of the Rehabilitation Act.

2. The defendants' motion for summary judgment is denied without prejudice as to plaintiff's claims under § 504 of the Rehabilitation Act and 42 U.S.C. § 1983.

3. The plaintiff's claim under the Revenue Sharing Act is dismissed without prejudice because of the plaintiff's apparent failure to exhaust his administrative remedies.