Douglas James SCANLON,
Plaintiff-Appellant,

v.

ATASCADERO STATE HOSPITAL,
California Department of Mental
Health, Defendants-Appellees.

No. 80–5201.

United States Court of Appeals,
Ninth Circuit.

Argued Sept. 15, 1981.

Submitted Oct. 15, 1981.

Decided May 24, 1982.

Rehearing and Rehearing En Banc
Denied Sept. 22, 1982.

Marilyn Holle, Western Law Center for the Handicapped, Los Angeles, Cal., for plaintiff-appellant.

James E. Ryan, Deputy Atty. Gen., Los Angeles, Cal., for defendants-appellees; Prudence Kay Poppink, Employment Law Center, San Francisco, Cal., on brief.

Before DUNIWAY and FERGUSON, Circuit Judges, and KELLAM,* District Judge.

DUNIWAY, Circuit Judge:

We affirm the dismissal of this action, brought under 29 U.S.C. § 794.

### I. *Facts.*

Scanlon alleges that he suffers from diabetes mellitus and a lack of vision in one

---

* The Honorable Richard B. Kellam, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

eye, that he was denied a job as a graduate student assistant at Atascadero State Hospital, and that this was discrimination in employment contrary to § 504 of the Rehabilitation Act, 29 U.S.C. § 794 and to various California statutes. The hospital moved for dismissal of the complaint, arguing (a) that § 794 does not apply to employment discrimination unless a primary objective of the federal financial assistance is to provide employment, and (b) that Scanlon's claims were barred by the Eleventh Amendment. The district court rejected argument (a) but accepted argument (b), and on that ground dismissed the § 794 claim and the pendent state claims.

## II. *Appealability of the Order.*

██ ██ The court's order merely dismissed the complaint; there is no judgment dismissing the action. Ordinarily, an order granting a motion to dismiss under rule 12(b)(6), F.R.Civ.P., carries with it a right to amend under rule 15(a), and thus is not an appealable final judgment. Here, however, the ruling was on a ground not curable by amendment, and it is clear that the court intended to dispose of the action. *See Scott v. Eversole Mortuary*, 9 Cir., 1975, 522 F.2d 1110, 1112. The order is appealable. However, the better practice would have been to enter a judgment of dismissal.

## III. *The Merits.*

██ We affirm on the ground that the complaint does not and cannot state a claim upon which relief can be granted. We do not reach the question of the applicability of the Eleventh Amendment. Title 29 U.S.C. § 794 now reads in pertinent part as follows:

No otherwise qualified handicapped individual in the United States, as defined in section 706(7) of this title, shall, solely by reason of his handicap, be excluded from the participation in, be denied the

benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. . . .

In *Trageser v. Libbie Rehabilitation Center, Inc.*, 4 Cir., 1978, 590 F.2d 87, 89, the Fourth Circuit decided that a private action under § 794 to redress employment discrimination cannot be maintained unless a primary objective of the federal financial assistance is to provide employment. The Second and Eighth Circuits have followed. *United States v. Cabrini Medical Center*, 2 Cir., 1981, 639 F.2d 908; *Carmi v. Metropolitan St. Louis Sewer District*, 8 Cir., 1980, 620 F.2d 672. *See also Simpson v. Reynolds Metals Co., Inc.*, 7 Cir., 1980, 629 F.2d 1226, 1232, 1234. For the reasons stated in *Trageser, supra*, we conclude that the order appealed from is correct.

Affirmed.

FERGUSON, Circuit Judge, dissenting:

My analysis of the Rehabilitation Act of 1973, of the 1978 Amendments to that Act, and of the legislative and administrative material which should guide our interpretation of that Act convinces me that the majority's decision in this case is in error. Accordingly, I dissent.

The issue in this case is whether Congress, by amending the Rehabilitation Act to "make available" the "remedies, procedures, and rights set forth in Title VI of the Civil Rights Act of 1964," [1] actually limited, in a drastic way, the remedies that were already available to persons aggrieved under § 504 of the Act. No support for such a view can be found in the Act, in the 1978 Amendments, or in the relevant legislative and administrative materials. Indeed, the only support that exists is the decision of the Fourth Circuit in *Trageser v. Libbie Rehabilitation Center*, 590 F.2d 87 (4th Cir. 1979). Neither that decision, nor those of the other courts that have followed it, can

1. Rehabilitation Act of 1973 ["the Act"] § 505(a)(2), 29 U.S.C. § 794a(a)(2), as amended by Comprehensive Rehabilitation Services

Amendments of 1978 ["the 1978 Amendments"], § 120(a).

withstand scrutiny. The *Trageser* decision has been criticized by the Senate Commit-

2. "[*Trageser*] is not consistent with Congress' original and continuing intent that handicapped individuals be empowered to bring suit in Federal District Court for alleged employment discrimination in violation of [section 504], regardless of the designated use of the Federal funds received by the employer in question." S.Rep.No.316, 96th Cong., 1st Sess. 13 (1979).

3. Comment: Commenters suggested that under [*Trageser*] the Department has no authority to accept or resolve employment discrimination complaints under Section 504.

   Response: The Guidelines reflect the Department's current interpretation of its authority. If and when it must be revised to conform to controlling judicial decisions, the new policy will be announced and will supersede the Guidelines.

Comments and Recommendations on Proposed Guidelines [now codified at 45 C.F.R. Part 84, Appendix B (1980)], 44 Fed.Reg. 17168, 17174 (1979).

These guidelines deserve special deference. They were developed in response to Executive Order 11914 (1976), which directed the Secretary of HEW to coordinate the implementation of § 504 by all federal departments and agencies, and directed those departmental agencies to "issue rules, regulations, and directives, consistent with the standards and procedures established by the Secretary of Health, Education, and Welfare." The coordinating function was transferred from HEW to the Attorney General by Executive Order 12250 (1980), which revoked Executive Order 11914.

4. As of 1980, the Attorney General was assigned responsibility for coordinating the enforcement of § 504 by federal departments and agencies. Executive Order 12250 (1980). See footnote 3, *supra.* In his analysis of rules promulgated under this authority, *see* 28 C.F.R. §§ 42.501–.540 (1980), the attorney general stated that

   HEW has construed section 504 to prohibit employment discrimination against handicapped persons in all programs receiving Federal financial assistance.... Several courts have construed section 504 to cover employment discrimination.... To date, two courts of appeals have taken a narrower view. *See* in *Trageser v. Libbie Rehabilitation Center, Inc.*, 590 F.2d 87 (4th Cir. 1976), *cert. den.*, 442 U.S. 947 [99 S.Ct. 2895, 61 L.Ed.2d 318] (1979); *Carmi v. Metropolitan St. Louis Sewer District*, No. 79–1325, [620] F.2d [672] (8th Cir. May 6, 1980)....

   The [*Trageser*] court's decision appears to rest solely on the language of section 120(a) of the Rehabilitation Act Amendments of 1978, which provides that "the remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964 shall be available" to persons aggrieved because of section 504 violations. Accordingly, "in the absence of legislative history to the contrary," the court

tee on Labor and Human Resources,[2] by HEW,[3] by the Department of Justice,[4] and held that section 120(a) of the Rehabilitation Act Amendments of 1978 incorporated the limitations of Title VI coverage as to employment discrimination. *Id.* at 89.

The court, in its analysis, did not focus on the remedial purpose of section 504 to provide broad protections to handicapped persons. Nor did the court consider the legislative histories of the Rehabilitation Act of 1973 and its subsequent amendments, which reflect the continuing congressional concern for the employment problems of handicapped persons. See, *e.g.*, S.Rep.No.93–318, 93d Cong., 1st Sess. 18–19, 70 (1973); S.Rep.No. 93–319, 93d Cong., 1st Sess. 2, 8 (1973); H.R. Rep.No.95–1149, 95th Cong., 2d Sess. 16, 18, 23–29, 34, 38, 42–43 (1978); S.Rep.No. 95–890, 95th Cong., 2d Sess. 8, 13, 20–21, 27, 36 (1978); H.R.Conf.Rep.No.95–1780, 95th Cong., 2d Sess. 80–81, 94–96, 98, 102 (1978). Further, the legislative history of section 120(a), which apparently was not brought to the attention of the court, indicates that the provision was not intended to limit the scope of section 504, but was merely a legislative ratification of HEW's enforcement procedures under section 504.

Section 120(a) was originally a provision in S. 2600 (95th Cong., 2d Sess., section 118(a) (1978)), the Senate version of the Rehabilitation Amendments of 1978 reported by the Senate Committee on Human Resources on May 15, 1978. The Committee stated, with respect to section 120(a):

It is the committee's understanding that the regulations promulgated by the Department of Health, Education, and Welfare with respect to procedures, remedies, and rights under section 504 conform with those promulgated under Title VI. Thus, *this amendment codifies existing practice as a specific statutory requirement.* (Sen.Rep.No.95–890, 95th Cong., 2d Sess. 19 (1978).) (Emphasis added)

In view of the legislative history of the Rehabilitation Act of 1973 and its amendments, HEW's administrative construction, the remedial nature of section 504 and the legislative history of section 120(a), the Department believes that the employment practices of recipients of Federal financial assistance are covered by section 504 regardless of the purpose of the assistance, and the Department's proposed regulations reflect this view (§§ 42,510–42,513).

Nondiscrimination Based on Handicap in Federally Assisted Programs—Implementation of Section 504 of the Rehabilitation Act of 1973 and Executive Order 11914, 45 Fed.Reg. 37620, 37628 (1980). The analysis goes on to note that in view of *Trageser* and *Carmi*, the provisions relating to employment would not be enforced within the Fourth and Eighth Circuits unless the primary objective of the federal funding is employment. *Id.*

by commentators.[5] It should not be followed by this court.

## I. BACKGROUND.

### A. *The Rehabilitation Act.*

Section 504 of the Act prohibits discrimination against the handicapped in "any program or activity receiving Federal financial assistance." 29 U.S.C. § 794. Prior to the enactment of the 1978 Amendments, this section had been held to create a private right of action for individuals aggrieved by employment discrimination on the basis of handicap. *See, e.g., Whitaker v. Board of Higher Education,* 461 F.Supp. 99, 106–08 (E.D.N.Y.1978); *Drennon v. Philadelphia Gen. Hosp.,* 428 F.Supp. 809, 815–16 & n.6 (E.D.Pa.1977). The Department of Health, Education, and Welfare had issued regulations implementing § 504 which prohibit employment discrimination against the handicapped by all recipients of federal financial assistance. *E.g.,* 45 C.F.R. § 84.11 (1977).[6] HEW also noted, in the analysis of its regulations, the existence of case law holding that § 504 creates a private right of action. 45 C.F.R. § 84 App. A subpar. 8 (1977). The conclusion reached by all of these authorities, that § 504 prohibits employment discrimination against the handicapped by every recipient of federal financial assistance, is supported by the language and clear intent of the Act itself. Section 504 provides:

> No otherwise qualified handicapped individual in the United States, as defined in section 706(7) of this title, shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, *or be subject to discrimination under* any program or activity receiving Federal financial assistance.

29 U.S.C. § 794 (emphasis added). Notably, the statute does not read ". . . or be subject to discrimination other than employment discrimination," nor does it include any words of limitation characterizing the purpose which the federal funding must have before the rights guaranteed by § 504 are available. Furthermore, a primary focus of the Rehabilitation Act was employment for the handicapped. Its purpose was "to see that these [handicapped] individuals do receive the services that they need, particularly that maximum efforts are made to develop a vocational goal for them." S.Rep.No.318, 93d Cong., 1st Sess. 18, reprinted in [1973] U.S.Code Cong. & Ad. News 2076, 2092. The achievement of that goal is plainly impeded by the existence of discriminatory hiring practices in either the public or the private sector, and it would be odd indeed for Congress to condone such discrimination in programs administered with the help of federal funds.

### B. *The 1978 Amendments and Title VI*

The courts recognized, under *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), that Congress had intended a private right of action to enforce the substantive rights specified in § 504.[7] *Lloyd v. Regional Transp. Authority,* 548 F.2d 1277, 1284–87 (7th Cir. 1977). However, the 1973 Act did not spell out federal department and agency procedures adequate to secure the enforcement of the rights it guaranteed, and federal agencies were slow to enforce

---

**5.** *E.g.,* Comment, Employment Discrimination Against the Handicapped: Can *Trageser* Repeal the Private Right of Action? 54 N.Y.U.L. Rev. 1173 (1979).

**6.** (1) No qualified handicapped person shall, on the basis of handicap, be subjected to discrimination in employment under any program or activity to which this part applies. . . . (3) A recipient shall make all decisions concerning employment under any program or activity to which this part applies in a manner which ensures that discrimination on the basis of handicap does not occur and may not limit, segregate, or classify applicants or employees in any way that adversely affects their opportunities or status because of handicap.

45 C.F.R. § 84.11 (1977). The part applies to "each recipient of Federal financial assistance from the Department of Health, Education and Welfare and to each program or activity that receives or benefits from such assistance." *Id.* § 84.2. There is no provision limiting the application of § 84.11 to programs where the purpose of the Federal funding is employment. These regulations were not altered in response to the 1978 amendments. *See* 45 C.F.R. §§ 84.2, 84.11 (1980).

**7.** Indeed, the Tenth Circuit recently noted: "Every court of appeals and district court, and there have been many, which have considered this question have held that a private right of action exists under the statute." (sic) *Pushkin v. Regents of University of Colorado,* 658 F.2d 1372, 1377 (10th Cir. 1981) (collecting cases).

those rights. *See* Comment, Employment Discrimination Against the Handicapped, 54 N.Y.U.L.Rev. 1173, 1192 (1979) [hereinafter cited as "Employment Discrimination"]. *See also* Linn, Uncle Sam Doesn't Want You: Entering the Federal Stronghold of Employment Discrimination against Handicapped Individuals, 27 De Paul L.Rev. 1047 (1978). As a result, first Congress, and then President Ford, directed federal agencies to promulgate enforcing regulations. Employment Discrimination, *supra*, at 1192. The resulting regulations did not distinguish among federally funded programs on the basis of the purpose of the federal funding. Instead, employment discrimination against the handicapped is prohibited in all such programs. *See, e.g.*, 45 C.F.R. § 84.11 (1977). Congress subsequently enacted the 1978 amendments, which were intended to codify as a statutory requirement the "existing HEW practice" embodied in its regulations at 45 C.F.R. parts 84, 85. S.Rep.No. 890, 95th Cong., 2d Sess. 19 (1978), U.S.Code Cong. & Admin.News 1978, p. 7312. As already noted, the language of that enactment "made available" the procedures of Title VI to aid in the enforcement of § 504.

Title VI, which prohibits racial discrimination in federally funded programs, provides as its most dramatic remedy a cutoff of federal funds to an offending program. 42 U.S.C. § 2000d–1. Title VI also contains a provision which limits enforcement by a federal agency or department in the event of employment discrimination based on race: "Nothing contained in this subchapter shall be construed to authorize action under this subchapter by any department or agency with respect to any employment practice of any employer, employment agency, or labor organization except where a primary objective of the Federal financial assistance is to provide employment." Section 604 of the Civil Rights Act of 1964, 42 U.S.C. § 2000d–3.

The principal issue presented to us today is whether the 1978 Amendments, in addition to explicitly making available to § 504 claimants the remedies of Title VI, also carried over the limitation on Title VI remedies effectuated by § 604. The crucial secondary issue concerns the proper scope of that limitation in the § 504 context, if

indeed it was carried over at all by the 1978 Amendments. The *Trageser* court held that the § 604 limitation is broad enough in its customary Title VI field of action to cut off all remedies available under Title VI when it applies at all. It held that the limitation was carried over in the same broad form by the 1978 Amendments, and concluded that, as amended, § 504 provides no remedy for employment discrimination unless the federal funding is provided for the purpose of an employment program.

Analysis shows that the *Trageser* court was wrong in each step of its syllogism. *Trageser* is wrong in its broad construction of § 604 in the Title VI context, wrong that the § 604 limitation was carried over to the Rehabilitation Act by the 1978 Amendments, and wrong in its conclusion that there is no remedy under § 504 for discrimination against the handicapped in a program receiving federal funds unless the purpose of those funds is for an employment program.

II. THE *TRAGESER* INTERPRETATION OF THE 1978 AMENDMENTS IS INCORRECT.

A. *The Section 604 Limitation to Title VI Remedies Does Not Limit the Private Right of Action for Race-Related Employment Discrimination.*

When Title VI was enacted, its sponsors clearly perceived the crucial distinction between the substantive right it codified and the remedy it provided. That substantive right, which belongs to individuals, can be remedied by private or administrative action.

Senator Humphrey emphasized that individuals can go to court to enforce their rights and that the remedy of funding termination was simply one method for enforcing Title VI rights—"the method for ... governmental *agencies* and activities covered by [the statute]. Senator Case supported Senator Humphrey's view that the substantive rights established in Title VI "are not limited by the limiting words of [its remedial provisions]."

Employment Discrimination, *supra*, 54 N.Y. U.L.Rev. at 1189, *citing* 110 Cong.Rec. 5255 (1964) (emphasis added). Indeed, that distinction is plain on the face of § 604. If

Congress had intended by § 604 to eliminate all remedies under Title VI for employment discrimination except where the purpose of the federal funding is employment, it could simply have legislated that nothing in Title VI "shall be construed to authorize action under this subchapter with respect to any employment practice...." But that is not what § 604 says. It says that nothing in Title VI "shall be construed to authorize action under this subchapter *by any department or agency* with respect to any employment practice...." 42 U.S.C. § 2000d–3 (emphasis added). The *Trageser* court, without any analysis, simply read these words out of the statute.[8] The Ninth Circuit has never ruled on this question. I am not persuaded that we should defer to the "reasoning" of the *Trageser* court on this point, because I do not find any reasoning in *Trageser* on this point. I would adhere to the plain language of the statute, and hold that the § 604 limitation on Title VI only applies to enforcement actions by federal agencies and departments. When § 604 is read in this way, it is clearly not a bar to the present action, even if, as I doubt, its limitation is to be applied to actions under the Rehabilitation Act.

B. *The 1978 Amendments Did Not Make the § 604 Limitation on Title VI Enforcement Applicable to § 504.*

The language of § 120(a) of the 1978 Amendments gives no clue that Congress believed it was limiting the existing remedies under § 504. It simply makes no sense

that by using language which purports to "make available" the remedies of Title VI, Congress actually intended to deprive the handicapped of a crucial remedy. The *Trageser* court, in an apparent attempt to sidestep this obvious objection to its analysis, opined that rather than withdrawing any previously available remedies, the 1978 Amendment "simply confirms a plausible reading of § 504 as originally enacted."[9] 590 F.2d at 89. I doubt that the reading proposed by the *Trageser* court is plausible even when nothing but the bare language of the 1973 Act is considered.[10] When the legislative and administrative gloss reviewed above is considered, the *Trageser* reading of the original statute is utterly implausible.

Aside from the clear language of the amendment, there is another reason to doubt that Congress meant to limit § 504 in the way *Trageser* concludes it did. The limitation of § 604 does not deprive persons aggrieved under Title VI of a remedy. Victims of racially based employment discrimination will still have a remedy under Title VII, unless the employer in question has fewer than fifteen employees. 42 U.S.C. § 2000e–2(a)(1), 2000e(b). Those left unprotected by Title VII may still have a private action under Title VI.[11] *See Cannon v. University of Chicago*, 441 U.S. 677, 710–16, 99 S.Ct. 1946, 1964–67, 60 L.Ed.2d 560 (1979); Comment, Employment Discrimination, *supra*, N.Y.U.L.Rev. at 1185–91. In contrast, Title VII does not cover

---

**8.** The *Trageser* court states in its opinion that "Title VI does not provide a judicial remedy for employment discrimination by institutions receiving federal funds unless (1) providing employment is a primary objective of the federal aid, or (2) discrimination in employment necessarily causes discrimination against the primary beneficiaries of the federal aid." 590 F.2d at 89 (footnotes omitted). One of the cases cited does hold that the § 604 limitation applies to private actions under Title VI. *Quiroz v. City of Santa Ana*, 18 FEP Cases 1138, 1140 (C.D.Cal.1978). It offers no reasoning or authority in support of this conclusion. Furthermore, that case merely dismissed the complaint with leave to amend. Since the plaintiff was a CETA worker, his complaint could easily have been amended to avoid the issue altogether. The other cases cited by the *Trageser* court do not support its assertion.

**9.** Other courts have known better. The Eighth Circuit observed in *Simon v. St. Louis County, Mo.*, 656 F.2d 316, 319 n.6 (8th Cir. 1981), that *Carmi v. Metropolitan St. Louis Sewer Dist.*, 620 F.2d 672, 674–75 (8th Cir. 1980), which follows the reasoning and adopts the holding of *Trageser*, "limited what had been construed to be a broader private right of action under section 504 ...." *Id.*

**10.** Civil rights statutes are to be construed as broadly as their language permits. *Griffin v. Breckinridge*, 403 U.S. 88, 97, 91 S.Ct. 1790, 1796, 23 L.Ed.2d 338 (1971); *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 437, 88 S.Ct. 2186, 2202, 20 L.Ed.2d 1189 (1968).

**11.** *See* note 8, *supra*. For cases holding that Title VI provides a private right of action, *see Cannon v. University of Chicago*, 441 U.S. 677, 696–97 & 696 nn.20, 21, 99 S.Ct. 1946, 1957–58 & 1957 nn. 20, 21, 60 L.Ed.2d 560.

handicap discrimination, so the only federal remedies available are those provided by the Rehabilitation Act. The *Trageser* doctrine leaves victims of employment discrimination without any federal remedy at all.

The legislative history of Title VI—which was commonly referred to as the "cut-off-the-funds title"—shows clearly that Congress was anxious not to endanger important federal programs by an over-liberal use of this drastic remedy when other remedies for racially based employment discrimination were readily available. *See, e.g.,* Hearings on H.R. 7152 Before the House Comm. on Rules, 88th Cong., 2d Sess. 379–80 (1964) (Remarks of Rep. Poff); *id.* at 197–200, 228 (Remarks of Rep. Avery). Congress tempered the remedies of its antidiscrimination legislation to preserve the goals of other important federal programs. By reading § 604 to exclude all remedies, rather than simply agency action, and then importing this broadened exclusion into the Rehabilitation Act, the *Trageser* "reasoning" makes a mockery of Congress's careful and measured approach.

This point was well put by Judge McMillian, concurring in *Carmi v. Metropolitan St. Louis Sewer Dist.*, 620 F.2d 672 (8th Cir. 1980). He wrote:

> Even if § 604 is interpreted to restrict individual actions under Title VI, it does not follow that a similar restriction exists on individual actions under the Rehabilitation Act, which encompasses a different kind of statutory scheme than the Civil Rights Act of 1964. . . . In the Civil Rights Act of 1964, the restriction of individual actions under Title VI merely means that individuals must proceed under Title VII against employment discrimination based on race, national origin, or religion. Under the Rehabilitation Act, restriction of individual actions under § 794a(a)(2) would deny any remedy at all to many victims of discrimination.

*Id.* at 679–80 (McMillian, J., concurring). In the context of Title VI, § 604 operates to circumscribe, in a considered way, the choice of remedies available for discrimination in violation of that title. In the context of § 504 of the Rehabilitation Act, applied *Trageser*-style, § 604 operates as a blunderbuss. As Judge Orrick noted in *Hart v. County of Alameda*, 485 F.Supp. 66, 72 (N.D.Cal.1979), "there is not a single word of legislative history to support [an inference that Congress intended to restrict the scope of Section 504 by importing the restrictions of Section 604]; indeed, the overwhelming impression created by the legislative history of the 1978 Amendments is that Congress intended to *expand* the remedies available under the Act."

## CONCLUSION

The goal of eliminating discrimination against the handicapped is a laudable one, and one which Congress has taken major steps to reach. The court today decides to turn its back on this goal. In so doing, the court flies in the face of the clear language of the Rehabilitation Act and the plain understanding and intent of Congress in enacting and amending that statute. I am therefore compelled to dissent.