709 F.2d 1235
 31 Fair Empl.Prac.Cas. 1183,
31 Empl. Prac. Dec. P 33,581, 12 Ed. Law Rep. 30,
1 A.D. Cases 438
 Lee MEYERSON, Plaintiff-Appellant,
v.
The STATE OF ARIZONA; Arizona Board of Regents; Ralph M.
Bilby; Rudy E. Campbell; Esther N. Capin; Earl H.
Carroll; Thomas Chandler; William G. Payne; William P.
Reilly; Tio A. Tachias; Renee Marler; John Schwada;
Paige E. Mulhollan; Karl H. Dannenfeldt; Joyce Foster;
Guido Weigand; Austin Jones; Leonard D. Goodstein; Peter
Killeen; John Does I thru V; and Jane Does I thru V,
Defendants-Appellees.
 No. 81-5996.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Dec. 14, 1982.
Decided May 9, 1983.
 
 Thomas E. Littler, Charles D. Roush, Treon, Warnicke & Roush, Phoenix, Ariz., for plaintiff-appellant.
 Stephen K. Smith, Phoenix, Ariz., for defendants-appellees.
 Appeal from the United States District Court for the District of Arizona.
 Before WALLACE and FERGUSON, Circuit Judges, and GRANT,* District Judge.
 WALLACE, Circuit Judge:
 
 
 1
 Meyerson, a handicapped psychology professor at Arizona State University (the University), charged the University with discrimination under four different statutory provisions: (1) section 504 of the Rehabilitation Act of 1973, as amended (the Act), 29 U.S.C. Sec. 794, (2) section 503 of the Act, 29 U.S.C. Sec. 793, (3) 42 U.S.C. Sec. 1983, and (4) the Revenue Sharing Act, 31 U.S.C. Secs. 1242, 1244(a). The district judge granted the University's motion for summary judgment on each statutory claim. Meyerson v. Arizona, 507 F.Supp. 859 (D.Ariz.1981); Meyerson v. Arizona, 526 F.Supp. 129 (D.Ariz.1981). Meyerson appeals the entry of summary judgment only on his claims under section 503, section 504, and section 1983. We affirm.
 
 
 2
 * Meyerson is a professor of psychology whose hearing is impaired to the extent that he must depend upon lip reading skills. He also suffers from a hip ailment, the result of a childhood disease. The University does not contest Meyerson's handicapped status and admits that it was aware of his condition when he was hired in 1967. Meyerson charges that the University has discriminated against him in four ways: by preventing him from advancing and fostering his fields of study, by failing to provide him with sufficient resources for research and study, by impairing his opportunities for professional development, and by paying him a salary which is not commensurate with his experience or service.
 
 
 3
 After pursuing administrative remedies through the University, Meyerson filed a section 503 complaint with the United States Department of Labor (the Department). The Department found that the University had discriminated against Meyerson, and has apparently sought to alleviate some of the conditions at the University. Although the parties dispute the effect of the Department's activities, Meyerson admits that "the situation at ASU with regard to discrimination has improved" since he pursued his legal remedies.
 
 
 4
 Meyerson filed a complaint in district court asserting claims under sections 503 and 504 of the Act, section 1983, and section 1242 of the Revenue Sharing Act. The University moved for summary judgment on all four claims. The district court granted the University's motion on the section 503 claim and dismissed without prejudice Meyerson's claim under the Revenue Sharing Act for failure to exhaust administrative remedies. 507 F.Supp. at 860-62, 864. The district judge also denied without prejudice the University's motion on the section 504 claim because of an inadequate record. Id. at 862-63. He also denied the University's motion on the section 1983 claim, pending the resolution of the section 504 issue. The district judge additionally held that Meyerson could not assert a section 1983 claim based on section 503. Id. at 864.
 
 
 5
 After discovery, the parties filed cross-motions for summary judgment. The district judge granted the University's motion on the section 504 and section 1983 claims. 526 F.Supp. at 129. On appeal, Meyerson has abandoned his claim under the Revenue Sharing Act and his section 1983 claim based on section 504. He appeals from the summary judgment entered on his sections 503 and 504 claims, and on his section 1983 claim based on section 503.
 
 II
 
 6
 Section 504 of the Act prohibits discrimination against the handicapped. It states in part that:
 
 
 7
 No otherwise qualified handicapped individual in the United States, as defined in section 706(7) of this title, shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance....
 
 
 8
 29 U.S.C. Sec. 794. In a case decided after Meyerson filed this appeal, we stated that a private action under section 504 "cannot be maintained unless a primary objective of the federal financial assistance is to provide employment." Scanlon v. Atascadero State Hospital, 677 F.2d 1271, 1272 (9th Cir.1982) (Scanlon ). Accord United States v. Cabrini Medical Center, 639 F.2d 908 (2d Cir.1981); Carmi v. Metropolitan St. Louis Sewer District, 620 F.2d 672, 674-75 (8th Cir.), cert. denied, 449 U.S. 892, 101 S.Ct. 249, 66 L.Ed.2d 117 (1980); Trageser v. Libbie Rehabilitation Center, Inc., 590 F.2d 87, 89 (4th Cir.1978), cert. denied, 442 U.S. 947, 99 S.Ct. 2895, 61 L.Ed.2d 318 (1979); contra Jones v. Metropolitan Atlanta Rapid Transit Authority, 681 F.2d 1376, 1378-80 (11th Cir.1982). The district court held that Meyerson failed to clear this initial hurdle.
 
 
 9
 Meyerson first requests that we reconsider our holding in Scanlon, contending that our analysis there conflicts with the Supreme Court's recent decision in North Haven Board of Education v. Bell, 456 U.S. 512, 102 S.Ct. 1912, 72 L.Ed.2d 299 (1982) (North Haven ) (holding that employment discrimination comes within Title IX's prohibition). See Le Strange v. Consolidated Rail Corp., 687 F.2d 767, 777-78 (3d Cir.1982) (Adams, J. & Weis, J., concurring) (rejecting the "primary objective" requirement as inconsistent with the Court's analysis in North Haven ), cert. granted, --- U.S. ----, 103 S.Ct. 1181, 75 L.Ed.2d 429 (1983) (No. 82-862). North Haven, however, was issued one week prior to our filing of Scanlon and over four months before the panel's decision to deny the petition for rehearing. Thus, we must ascribe knowledge of North Haven to the panel in Scanlon. North Haven is not directly contrary to Scanlon. Since we are not permitted to reverse the decision of a panel of this court, absent a contrary intervening Supreme Court decision or a convening of our court en banc, we must adhere to our holding in Scanlon.
 
 
 10
 Meyerson next claims that even conceding the validity of Scanlon, the district court erred in holding that employment was not a primary objective of the federal assistance received by the University. The federal assistance to the University consisted of instructional and research grants. Their primary purpose was to further scientific research and assist in the training of clinical psychologists. Undoubtedly, these programs provided employment for various professors and graduate students. Nevertheless, such a minimal and incidental effect on employment could not have been one of the primary purposes of the grants. Indeed, almost all federal assistance results in an increase of at least some employment. Therefore, to adopt Meyerson's argument would essentially eliminate the "primary objective" requirement, in derogation of the congressional intent. We conclude that providing employment was not one of the primary objectives of the instructional and research grants made by the government to the University.[1]
 
 III
 
 11
 Section 503 of the Act requires affirmative action programs for employing the handicapped. It states that:
 
 
 12
 Any contract in excess of $2,500 entered into by any Federal department or agency for the procurement of personal property and nonpersonal services (including construction) for the United States shall contain a provision requiring that, in employing persons to carry out such contract[,] the party contracting with the United States shall take affirmative action to employ and advance in employment qualified handicapped individuals as defined in section 706(7) of this title....
 
 
 13
 29 U.S.C. Sec. 793(a). Subsequent to the district court's decision in this case, we decided Fisher v. City of Tucson, 663 F.2d 861 (9th Cir.1981), cert. denied, --- U.S. ----, 103 S.Ct. 178, 74 L.Ed.2d 146 (1982) (Fisher ). Employing the four-part test of Cort v. Ash, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), we concluded that section 503 does not give rise to a private right of action. 663 F.2d at 863-67. Meyerson makes no attempt to distinguish Fisher, requesting only that we reconsider our earlier holding. Again, this argument is one that may be made properly in a suggestion for rehearing en banc, but not to us.
 
 IV
 
 14
 Meyerson contends that although Fisher forecloses a private cause of action based directly on section 503, he may still assert a claim under 42 U.S.C. Sec. 1983 based on a violation of section 503.[2] Although we were not confronted with this question in Fisher, our reading of that case and our own independent analysis of the statutory scheme of enforcement under section 503 compel the conclusion that Meyerson cannot circumvent the holding in Fisher by asserting his section 503 claim via section 1983.
 
 
 15
 Section 1983 provides a private cause of action for a violation of a federal statute under color of state law. Maine v. Thiboutot, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980). A plaintiff's failure to prove that a private cause of action may be inferred from a statute does not necessarily preclude a remedy under section 1983 based on that statute. See Middlesex County Sewerage Authority v. National Sea Clammers Association, 453 U.S. 1, 18-19, 101 S.Ct. 2615, 2625, 69 L.Ed.2d 435 (1981) (Middlesex ). However, the Supreme Court has identified two exceptions to the application of section 1983 to statutory violations: (1) where Congress has foreclosed private enforcement of that statute in the enactment itself, and (2) where the statute does not create "enforceable rights." Id. at 19, 101 S.Ct. at 2626; Pennhurst State School and Hospital v. Halderman, 451 U.S. 1, 28, 101 S.Ct. 1531, 1545, 67 L.Ed.2d 694 (1981) (Pennhurst ). Our task is to determine if either of these exceptions applies to section 503.
 
 
 16
 The district court rejected Meyerson's section 1983 claim because it concluded that section 503 conferred no substantive rights upon handicapped persons. 507 F.Supp. at 864. Thus, the district court's dismissal fits within the second Middlesex exception, the "rights" exception. Meyerson argues that the district court's conclusion cannot be upheld due to our holding in Fisher, supra. Employing the first prong of the Cort v. Ash test, we inquired in Fisher whether Congress intended to confer federal rights on the beneficiaries of section 503. Fisher, supra, 663 F.2d at 863-64. Answering affirmatively, we concluded:
 
 
 17
 While we agree with the Fifth Circuit's ultimate conclusion that section 503 does not create a private right of action, we do find that the statute creates a federal right on behalf of the protected class. Clearly the statute was intended to benefit handicapped persons. The statute also provides that any handicapped individual who believes that a contractor is not in compliance with his contract may file a complaint with the DOL, which has investigatory and enforcement powers. It seems apparent that Congress did intend to confer some federal rights on handicapped individuals.
 
 
 18
 Id. (citation and footnote omitted) (emphasis added).
 
 
 19
 Meyerson contends that this language precludes the University from asserting the second Middlesex exception as a bar to his section 1983 claim. The implication of Meyerson's argument is that a finding for plaintiff under the first prong of the Cort v. Ash analysis precludes a defendant's assertion of the second Middlesex exception. The University interprets this passage as stating only that a private party has a "right" to seek enforcement through the Department, not that section 503 creates a federal substantive "right" as that term is used by the Supreme Court in Pennhurst and Middlesex. We need not resolve this question because we conclude that Meyerson's suit is barred under the first Middlesex exception, the exclusivity exception.
 
 
 20
 In applying this first exception, the Supreme Court has stated that, "[w]hen the remedial devices provided in a particular Act are sufficiently comprehensive, they may suffice to demonstrate congressional intent to preclude the remedy of suits under Sec. 1983." Middlesex, supra, 453 U.S. at 20, 101 S.Ct. at 2626. The Act establishes the Department as the agency responsible for enforcing its provisions:
 
 
 21
 If any handicapped individual believes any contractor has failed or refuses to comply with the provisions of his contract with the United States, relating to employment of handicapped individuals, such individual may file a complaint with the Department of Labor. The Department shall promptly investigate such complaint and shall take such action thereon as the facts and circumstances warrant, consistent with the terms of such contract and the laws and regulations applicable thereto.
 
 
 22
 29 U.S.C. Sec. 793(b).
 
 
 23
 The administrative mechanism for enforcing the Act is set out at 41 C.F.R. Secs. 60-741.1 through 60-741.54. Under these provisions, any government contract or subcontract for more than $2,500 must contain an affirmative action clause. Id. Secs. 60-741.4 and 60-741.20. If the Department discovers a violation of the affirmative action clause or of the regulations, it is instructed to proceed "by informal means, including conciliation, and persuasion, whenever possible." Id. Sec. 60-741.28(a). If these efforts are unsuccessful, the Department's authorized representative may bring suit to enforce the contractual provisions, withhold progress payments on the contract, terminate a contract in whole or in part, or debar a contractor from receiving future government contracts. Id. Sec. 60-741.28(b)-(e). The question before us is whether Congress intended these administrative remedies to be the exclusive remedies under section 503 of the Act.
 
 
 24
 In Fisher, supra, under our analysis of the third prong of Cort v. Ash, we concluded that a private action under section 503 would be inconsistent with the administrative scheme provided by Congress. We held that "Congress intended to leave the supervision of the affirmative action programs to the [Department]." 663 F.2d at 867. As indicated earlier, we realize there are differences between the analysis under Cort v. Ash of whether a private cause of action can be inferred from a statute and the analysis of whether Congress intended certain remedies to be exclusive.[3] In this case, however, we conclude that the explicit finding in Fisher that Congress intended to leave the supervision of the affirmative action programs to the Department disposes of the exclusivity question. We could not now find that Congress did not intend the administrative remedies to be exclusive without directly contradicting Fisher.
 
 
 25
 Moreover, the same reasons which led to our conclusion in Fisher are applicable here. We stated there that judicial inquiry would only duplicate the Department's investigation of factual allegations. Id. at 867. This observation supports a conclusion that Congress intended the administrative remedies to be exclusive. We indicated in Fisher our doubt that Congress intended us to review the affirmative action plans of governmental entities. Id. Indeed, statutes mandating affirmative action, as opposed to statutes prohibiting discrimination, lend themselves more easily to administrative enforcement than judicial review. This conclusion is reinforced by Congress's mandate that the Department employ means of persuasion and quiet coercion to direct the behavior of statutory offenders. Thus, our independent reading of the statutes and regulations leads us to conclude that Congress intended to foreclose private actions under section 503, whether they are brought directly under section 503 or indirectly under section 1983.
 
 
 26
 Meyerson contends that Congress could not have intended to foreclose a private action because the available administrative remedies are insufficient. He argues that drastic remedies such as the termination of funds are seldom employed and, hence, are ineffective. He argues further that this insufficiency is illustrated by his own case, in which the Department has found that he was discriminated against by the University, but, he asserts, no significant changes have resulted. It is not our function, however, to "consider whether the current enforcement mechanism is the best method to effectuate the purposes of the Act; our function is to determine the intent of Congress." Fisher, supra, 663 F.2d at 867. We have concluded that Congress intended these remedies to be exclusive; it is largely irrelevant whether we think that these remedies are efficacious.
 
 
 27
 In addition, we have difficulty accepting Meyerson's conclusion that the enforcement scheme is ineffective. A variety of techniques to seek compliance with the Act may be employed, including informal persuasion. These techniques have been somewhat effective in Meyerson's own case, as evidenced by the changes that he admits have taken place since he pursued his remedies. Because much of the Department's effort took place subsequent to the district court action and thus is not part of the record before us, we are unable to determine the extent to which the enforcement mechanism has been effective. Furthermore, in an era of intense competition for federal funds, we cannot say that the available remedies are ineffective. The ability of government entities, such as the University, to compete for scarce federal funds might well be hindered by a record of discriminatory practices toward the handicapped. Thus, although Meyerson may feel unsatisfied by the remedies pursued on his behalf in this case, we cannot say that the administrative enforcement scheme is insufficient to effectuate the policies of the Act.
 
 
 28
 Therefore, we affirm the district court's dismissal of Meyerson's section 1983 claim although for a different reason than that offered by the district court. We hold that Congress has foreclosed private enforcement of section 503 by providing a comprehensive remedial scheme under the authority of the Department.
 
 
 29
 AFFIRMED.
 
 FERGUSON, Circuit Judge, concurring:
 
 30
 I concur in Judge Wallace's opinion.
 
 
 31
 With regard to the issue concerning section 504 of the Rehabilitation Act of 1973, I do so only because Scanlon v. Atascadero Hospital, 677 F.2d 1271 (9th Cir.1982), compels that result. I am still of the opinion that Scanlon was incorrectly decided, as I was when I dissented in that case. 677 F.2d at 1272-77.
 
 
 32
 GRANT, Circuit Judge, also concurs in Circuit Judge FERGUSON's concurring opinion.
 
 
 
 *
 Honorable Robert A. Grant, United States District Judge, Northern District of Indiana, sitting by designation
 
 
 [1]
 The district court apparently rejected Meyerson's claim both because he failed to establish a sufficient nexus between himself and the federal assistance received by the University, and because he failed to show that a primary objective of the federal assistance was to provide employment. Meyerson v. Arizona, 526 F.Supp. 129, 130-31 (D.Ariz.1981). Since we conclude that Meyerson fails to establish that the research grants had a primary purpose to provide employment, we need not consider the nature of the nexus requirement or whether it was established by Meyerson
 
 
 [2]
 Section 1983 states that:
 Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.
 42 U.S.C. Sec. 1983. The Supreme Court has held that section 1983 applies to violations of all federal statutes, not just civil rights statutes. Maine v. Thiboutot, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980).
 
 
 [3]
 The most salient difference involves the allocation of the burden of proof. The burden is on the plaintiff to show that Congress intended to create a private cause of action when it enacted a particular statute. See Osborn v. American Association of Retired Persons, 660 F.2d 740, 745 (9th Cir.1981) (silent legislative history and lack of express statutory language are enough to defeat inference of a private cause of action). On the other hand, the burden is not on the plaintiff to demonstrate congressional intent to preserve section 1983 remedies. Middlesex County Sewerage Authority v. National Sea Clammers Association, 453 U.S. 1, 21 n. 31, 27-28 n. 11, 101 S.Ct. 2615, 2626 n. 31, 2630 n. 11, 69 L.Ed.2d 435 (majority opinion and opinion of Stevens, J., dissenting). Nevertheless, in this case both the express language and the reasoning of Fisher preclude us from permitting Meyerson to assert a claim under section 1983, regardless of who shoulders the burden of proof